591 So.2d 917 (1991)
Louis B. GASKIN, Appellant,
v.
STATE of Florida, Appellee.
No. 76326.
Supreme Court of Florida.
December 5, 1991.
*918 James B. Gibson, Public Defender and Christopher S. Quarles, Asst. Public Defender, Seventh Judicial Circuit, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen. and Barbara C. Davis, Asst. Atty. Gen., Daytona Beach, for appellee.
BARKETT, Justice.
Louis B. Gaskin appeals from convictions for first-degree murder and related offenses and sentences, including the death penalty.[1]
The convictions arise from events occurring on the night of December 20, 1989, when Gaskin drove from Bunnell to Palm Coast and spotted a light in the house of the victims, Robert and Georgette Sturmfels. Gaskin parked his car in the woods and, with a loaded gun, approached the house. Through a window he saw the Sturmfels sitting in their den. After circling the house a number of times, Gaskin shot Mr. Sturmfels twice through the window. As Mrs. Sturmfels rose to leave the room, Gaskin shot her and then shot Mr. Sturmfels a third time. Mrs. Sturmfels crawled into the hallway, and Gaskin pursued her around the house until he saw her through the door and shot her again. Gaskin then pulled out a screen, broke the window, and entered the home. He fired one more bullet into each of the Sturmfels' heads and covered the bodies with blankets. Gaskin then went through the house taking lamps, video cassette recorders, some cash, and jewelry.
Gaskin then proceeded to the home of Joseph and Mary Rector, whom he again spied through a window sitting in their den. While Gaskin cut their phone lines, the Rectors went to bed and turned out the lights. In an effort to roust Mr. Rector, Gaskin threw a log and some rocks at the house. When Mr. Rector rose to investigate, Gaskin shot him from outside the house. The Rectors managed to get to their car and drive to the hospital in spite of additional shots fired at their car as they sped away. Gaskin then burglarized the house.
Gaskin's involvement in the shootings was brought to the attention of the authorities by Alfonso Golden, cousin of Gaskin's girlfriend. The night of the murders, Gaskin had appeared at Golden's home and asked to leave some "Christmas presents." Gaskin told Golden that he had "jacked" the presents and left the victims "stiff." Golden learned of the robberies and murders after watching the news and called the authorities to report what he knew. The property that had been left with Golden was subsequently identified as belonging to the Sturmfels.
Gaskin was arrested on December 30, and a search of Gaskin's home produced more of the stolen items. After signing a rights-waiver form, Gaskin confessed to the crimes and directed the authorities to further evidence of the crime in a nearby canal.
The jury found Gaskin guilty of two counts of first-degree murder in the death of Robert Sturmfels (premeditated and felony murder); two counts of first-degree murder in the death of Georgette Sturmfels (premeditated and first-degree murder); one count of armed robbery of the Sturmfels; one count of burglary of the Sturmfels' home; one count of attempted first-degree murder of Joseph Rector; one count of armed robbery of the Rectors; and one count of burglary of the Rector's home. The jury found Gaskin not guilty of attempted first-degree murder of Mary Rector.
During the penalty phase, the State introduced ballistics evidence by firing various types of bullets from the rifle used in the murders to demonstrate that the ammunition Gaskin chose to use in the murders *919 supports a finding that the murders were heinous, atrocious, or cruel. The defense introduced the testimony of Janet Morris, Gaskin's cousin, who testified that she and Gaskin were raised by their great-grandparents, who were very strict, and that Gaskin never gave anyone any trouble during his formative years. The jury recommended death for both murders by a vote of eight to four. In addition to the penalty phase testimony, the judge was given a certified judgment and sentence for an unrelated burglary, a copy of Gaskin's statement, and a copy of a psychiatric report by Dr. Jack Rotstein to consider in sentencing Gaskin.
The trial judge found in aggravation that (1) both murders were committed in a cold, calculated, and premeditated manner;[2] (2) Gaskin had previously been convicted of another capital offense or of a felony involving the use or threat of violence;[3] and (3) that the murders were committed while the defendant was engaged in the commission of a robbery or burglary.[4] Additionally, the trial court found that the murder of Georgette Sturmfels was especially wicked, evil, atrocious, or cruel.[5] The court found in mitigation of both murders that (1) the murders were committed while Gaskin was under the influence of extreme mental or emotional disturbance; and (2) that Gaskin had a deprived childhood. The court concluded that the aggravating circumstances outweighed the mitigating circumstances and imposed the death penalty for both murders. The court also sentenced Gaskin to consecutive life terms for the noncapital offenses.
Gaskin raises numerous claims of error which he argues require a reversal of his convictions or sentences. Gaskin first argues that the trial court erroneously denied his motion for a change of venue because pretrial publicity precluded selection of a fair and impartial jury. "An application for change of venue is addressed to a court's sound discretion, and a trial court's ruling will not be reversed absent a palpable abuse of discretion." Davis v. State, 461 So.2d 67, 69 (Fla. 1984), cert. denied, 473 U.S. 913, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985). The test for changing venue is
"whether the general state of mind of the inhabitants of a community is so infected by knowledge of the incident and accompanying prejudice, bias, and preconceived opinions that jurors could not possibly put these matters out of their minds and try the case solely on the evidence presented in the courtroom."
Id. (quoting Manning v. State, 378 So.2d 274, 276 (Fla. 1979). The trial court did not abuse its discretion in finding that the test had not been met here. While many of the venire admitted to knowing that the crime had been committed, those with any significant knowledge were excused. All jurors who served affirmatively and unequivocally stated that they could put aside any prior knowledge and decide the case solely on the evidence presented at trial. There is nothing in the record that suggests otherwise.
Moreover, the judge liberally excused jurors for cause when challenged, and he granted each attorney an additional five peremptory challenges, indicating that he would give more if needed. When the list of jurors chosen to sit was read, defense counsel did not request additional peremptory challenges and did not even use all the peremptory challenges available. The court also granted the defense motion for individual voir dire regarding publicity and feelings on capital punishment, and the court allowed wide latitude in the questioning. There is nothing in the record to *920 indicate defense counsel was precluded from striking any undesirable juror. Nor has Gaskin demonstrated he was otherwise prejudiced by any knowledge the jurors may have possessed. Accordingly, on the facts presented here we find no abuse of discretion in the judge's denial of the change of venue motion.
Gaskin next argues that the trial court erred in adjudicating him guilty of both premeditated and felony murder for each of the two deaths for a total of four convictions. We agree that each death will support only one adjudication. See Lamb v. State, 532 So.2d 1051 (Fla. 1988); Houser v. State, 474 So.2d 1193 (Fla. 1985). Accordingly, we vacate one adjudication for first-degree murder for each victim.
We reject Gaskin's claim that his constitutional rights were violated because the court stenographer did not record certain proceedings at the bench. See Bruno v. State, 574 So.2d 76, 81 (Fla.), cert. denied, ___ U.S. ___, 112 S.Ct. 112, 116 L.Ed.2d 81 (1991). We also reject Gaskin's claim that the trial court erred in instructing the jury on the definition of reasonable doubt. See, e.g., Brown v. State, 565 So.2d 304 (Fla.), cert. denied, ___ U.S. ___, 111 S.Ct. 537, 112 L.Ed.2d 547 (1990). We likewise find no merit to Gaskin's claim that the trial court erred in admitting several pieces of physical evidence. The trial court has great latitude in determining the relevance of evidence, and such determinations will not be disturbed absent an abuse of discretion. See Hardwick v. State, 521 So.2d 1071 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988). We have reviewed the record and find no abuse in the admission of the evidence in question.
Turning to the penalty phase, we find no reversible error in Gaskin's claim that the trial judge made an impermissible comment on the evidence during the penalty phase. We also reject without discussion Gaskin's multiple assertions regarding the constitutionality of the capital-sentencing statute as each of his arguments has previously been decided adversely to his position.
Gaskin next argues that the record fails to reflect Gaskin's presence at the firing range where the State presented its ballistics evidence. To the contrary, the record reflects that the trial judge specifically stated that Gaskin was present in a patrol car with the windows rolled down so he could observe the demonstration. Defense counsel did not dispute this statement or otherwise object to the proceeding. We thus reject this claim.
Finally, Gaskin alleges error in the consideration of aggravating and mitigating circumstances. Gaskin first argues that the trial court erred in finding that the murder of Georgette Sturmfels was heinous, atrocious, or cruel.[6] We find no abuse of discretion in the trial court's conclusion.
According to Gaskin's own statement, after twice shooting Mr. Sturmfels, "his wife realized what was going on." She tried to run away but Gaskin shot her. Gaskin turned back to Mr. Sturmfels, who was still standing, and shot him again. When Mrs. Sturmfels attempted to crawl out of view, Gaskin shot her still again as she continued to try to crawl to safety. Gaskin then tracked her around the house until he got her in view through the other doors that faced the hallway. "She was sitting there holding her head, looking at the blood." Gaskin then shot her again, and she fell over. While Mrs. Sturmfels lay there "groggily or dying," Gaskin subsequently entered the home through a window. Although Mr. Sturmfels was already dead, Gaskin "shot him again in the head at point-blank range." He then sought out Mrs. Sturmfels and "shot her again in the head at point-blank range."
The facts show that Mrs. Sturmfels knew her husband was being murdered, and that she must have contemplated her own death. She was shot at least twice before crawling down the hall where she *921 watched blood pour from her wounds. She must have been in physical pain and mentally aware of her impending death as Gaskin first disabled her and then stalked her throughout the house. We find under the totality of facts presented here that the trial court did not abuse its discretion in concluding that this circumstance had been proven beyond a reasonable doubt. We note that even if this aggravating circumstance had not been found, we are persuaded that the trial court would have nevertheless imposed the death penalty, as it did for the death of Mr. Sturmfels in the absence of this aggravating circumstance.
Gaskin also alleges that the trial court erred in its consideration of the mitigating evidence regarding his mental state. We find no error in the trial court's assessment. Dr. Rotstein, the psychiatrist, reported the following diagnosis:
Schizotypal personality disorder appears to best fit this man's behavior. He is uncomfortable around others socially. He has preoccupations which almost or perhaps do reach the level of delusions and has perceptional experiences which sound very strongly like auditory hallucinations. He also describes episodes of Derealization or Depersonalization during the assault on the Rectors.
Dr. Rotstein concluded that at the time of the crimes, Gaskin was unable to conform his conduct to normal human behavior. However, the trial court concluded that the more accurate classification would be "extreme mental or emotional disturbance." We find that the trial court adequately considered all the mental mitigating evidence. The sentencing order clearly indicates a careful analysis of the psychiatric report in relation to the totality of the evidence:
The murder[s were] committed while the defendant was under the influence of extreme mental or emotional disturbance. Although the court finds that the defendant's capacity was not impaired the court finds that the expert testimony combined with the other facts of the case support this finding. The court notes that it relied on the same expert testimony for the purpose of determining the factor involving substantially impaired capacity.
In rejecting that the defendant was unable to conform his conduct to the requirements of law, the judge explained in detail:
The defendant was capable of appreciating the criminality of his conduct or of conforming his conduct to the requirements of law. Although there was expert testimony introduced regarding this factor this court has considered that testimony in making a finding of extreme mental disturbance as a mitigating circumstance. The evidence in the case shows the defendant, though crudely planned, carried out the murder[s] in a calculated fashion in order to obtain property from his victim's [sic] and then hid the property at a friend's house. The evidence shows the defendant knew at the time he was committing the murder that his conduct was criminal and had the capacity to conform his conduct to the requirements of law. His careful plan to avoid detection was designed so he would not be caught for the crime and suffer the criminal penalties. The facts do not support any implication that the defendant was engaged in a ninja type assassination.
Dr. Rotstein's report as a whole contains sufficient information to support the trial court's conclusion that Gaskin was able to appreciate the criminality of his conduct or to conform his conduct to normal human behavior despite being mentally and emotionally disturbed. For example, Gaskin told Dr. Rotstein:
The devil had more of a hold than God did. I knew that I was wrong. I wasn't insane. There was no insanity involved.
In other parts of the report, Gaskin described his thoughts just prior to the murders:
[T]he guy was on the Lazy Boy watching TV, the woman was on the sofa. I walked around a few more times. The devil was telling me to kill him. God was telling me to go back home. I was trying to decide what to do.
... .

*922 I aimed at the guy. God said "No"; the devil said "yes." I pulled the trigger. There was no bullet in the chamber. I breathed a sigh of relief and also a sigh of disappointment. I walked around four or five times more. I couldn't make up my mind. I aimed the gun. I couldn't do it. I wasn't afraid. The shots wouldn't be heard.
We find no error in the judge's treatment of the mental mitigating evidence or in the weighing of the aggravating and mitigating circumstances.
Accordingly, we affirm the convictions, except for two of the four adjudications for murder, and the sentences, including two sentences of death. We remand for proceedings consistent with this opinion.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution.
[2] See § 921.141(5)(i), Fla. Stat. (1987).
[3] Id. § 921.141(5)(b). The trial judge supported this factor in Robert Sturmfels' death with the contemporaneous convictions for the offenses involving the Rectors and Georgette Sturmfels; and in Georgette Sturmfels' death, with the contemporaneous convictions involving the Rectors and Robert Sturmfels.
[4] Id. § 921.141(5)(d).
[5] Id. § 921.141(5)(h). The trial judge found this factor inapplicable to Robert Sturmfels because he was shot in rapid succession and died quickly.
[6] This argument does not apply to the death sentence imposed for Robert Sturmfels because the trial court did not find the aggravating circumstance of heinous, atrocious, or cruel. See supra note 5.