[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 3, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-12351

_____

D. C. Docket No. 03-00547-CV-J-20HTS

LOUIS B. GASKIN,

Petitioner-Appellant,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(August 3, 2007)**

Before TJOFLAT, BLACK and WILSON, Circuit Judges.

PER CURIAM:

Louis B. Gaskin ("Gaskin"), a death-sentenced inmate in the Florida prison system, filed a petition for writ of habeas corpus challenging his state court convictions for two counts of first degree murder, one count of attempted first degree murder with a firearm, and two counts of burglary of a dwelling with a firearm. The district court denied Gaskin's petition on numerous grounds. We granted a certificate of appealability on three issues: (1) whether Gaskin was denied the effective assistance of counsel in the penalty phase of his trial based on counsel's failure to investigate and present mitigation evidence and to address statutory mitigating circumstances in closing argument; (2) whether Gaskin was denied a fair and impartial jury when the trial court denied his motions to change venue due to pervasive and prejudicial pretrial publicity; and (3) whether Florida's capital sentencing statute is unconstitutional on its face and as applied, and whether this claim is procedurally defaulted.[1] After a thorough review of the record, and after having the benefit of oral argument, we affirm the district court's denial.

## BACKGROUND

The Florida Supreme Court summarized the factual background in Gaskin's direct appeal:

---

[1]Gaskin concedes that his claim regarding the constitutionality of Florida's capital sentencing statute is
procedurally defaulted. Accordingly, we affirm the district court's denial on that issue without further discussion.

2

The convictions arise from events occurring on the night of December 20, 1989, when Gaskin drove from Bunnell to Palm Coast and spotted a light in the house of the victims, Robert and Georgette Sturmfels. Gaskin parked his car in the woods and, with a loaded gun, approached the house. Through a window he saw the Sturmfels sitting in their den. After circling the house a number of times, Gaskin shot Mr. Sturmfels twice through the window. As Mrs. Sturmfels rose to leave the room, Gaskin shot her and then shot Mr. Sturmfels a third time. Mrs. Sturmfels crawled into the hallway, and Gaskin pursued her around the house until he saw her through the door and shot her again. Gaskin then pulled out a screen, broke the window, and entered the home. He fired one more bullet into each of the Sturmfels' heads and covered the bodies with blankets. Gaskin then went through the house taking lamps, video cassette recorders, some cash, and jewelry.

Gaskin then proceeded to the home of Joseph and Mary Rector, whom he again spied through a window sitting in their den. While Gaskin cut their phone lines, the Rectors went to bed and turned out the lights. In an effort to roust Mr. Rector, Gaskin threw a log and some rocks at the house. When Mr. Rector rose to investigate, Gaskin shot him from outside the house. The Rectors managed to get to their car and drive to the hospital in spite of additional shots fired at their car as they sped away. Gaskin then burglarized the house.

Gaskin's involvement in the shootings was brought to the attention of the authorities by Alfonso Golden, cousin of Gaskin's girlfriend. The night of the murders, Gaskin had appeared at Golden's home and asked to leave some "Christmas presents." Gaskin told Golden that he had "jacked" the presents and left the victims "stiff." Golden learned of the robberies and murders after watching the news and called the authorities to report what he knew. The property that had been left with Golden was subsequently identified as belonging to the Sturmfels.

Gaskin was arrested on December 30, and a search of Gaskin's home produced more of the stolen items. After signing a rights-waiver form, Gaskin confessed to the crimes and directed the authorities to further evidence of the crime in a nearby canal.

The jury found Gaskin guilty of two counts of first-degree murder in the death of Robert Sturmfels (premeditated and felony

murder); two counts of first-degree murder in the death of Georgette
Sturmfels (premeditated and first-degree murder); one count of armed
robbery of the Sturmfels; one count of burglary of the Sturmfels'
home; one count of attempted first-degree murder of Joseph Rector;
one count of armed robbery of the Rectors; and one count of burglary
of the Rector's home. The jury found Gaskin not guilty of attempted
first-degree murder of Mary Rector.

     During the penalty phase . . . [t]he defense introduced the
testimony of Janet Morris, Gaskin's cousin, who testified that she and
Gaskin were raised by their great-grandparents, who were very strict,
and that Gaskin never gave anyone any trouble during his formative
years. The jury recommended death for both murders by a vote of
eight to four. In addition to the penalty phase testimony, the judge
was given a certified judgment and sentence for an unrelated burglary,
a copy of Gaskin's statement, and a copy of a psychiatric report by Dr.
Jack Rotstein to consider in sentencing Gaskin.

*Gaskin v. State* (*Gaskin I*), 591 So. 2d 917, 918–19 (Fla. 1991).

Following an unsuccessful direct appeal,[2] Gaskin pursued post-conviction

relief in state court pursuant to Fla. R. Crim. P. 3.850. The trial court denied his

petition without conducting an evidentiary hearing. On appeal, the Florida

Supreme Court ordered an evidentiary hearing on Gaskin's ineffective assistance

of counsel claims, but affirmed on all other issues. *Gaskin v. State (Gaskin II)*, 737

So. 2d 509, 518 (Fla. 1999) (per curiam). On remand, the trial court conducted an

evidentiary hearing and denied relief. The Florida Supreme Court affirmed,

finding that (1) defense counsel's decision not to present mental health evidence in

---

[2]The Florida Supreme Court affirmed Gaskin's convictions, with the exception of
vacating one adjudication for first-degree murder for each victim because "each death will
support only one adjudication." *Gaskin I*, 591 So.2d at 920.

4

mitigation was a reasonable strategic decision; (2) any deficiency in counsel's failure to provide the mental health expert with Gaskin's school record was not prejudicial; and (3) defense counsel's penalty phase closing argument did not amount to ineffective assistance. *Gaskin v. State (Gaskin III)*, 822 So. 2d 1243, 1249–52 (Fla. 2002) (per curiam). Gaskin then filed a petition for writ of habeas corpus in the federal district court, which denied his petition without holding an evidentiary hearing.

## STANDARDS OF REVIEW

"When reviewing the district court's denial of a habeas petition, we review questions of law and mixed questions of law and fact *de novo,* and findings of fact for clear error." *Nyland v. Moore*, 216 F.3d 1264, 1266 (11th Cir. 2000) (per curiam). Because Gaskin's petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), we, in essence, review the decisions of the state courts. Pursuant to the AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in

5

the State court proceeding.

28 U.S.C. § 2254(d). Furthermore, a state court's factual findings are presumed

correct, unless rebutted by the petitioner with clear and convincing evidence. *Id.* §

2254(e)(1).

> Under the contrary to clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by the
> Supreme Court on a question of law or if the state court decides a case
> differently than the Court has on a set of materially indistinguishable
> facts. Under the unreasonable application clause, a federal habeas
> court may grant the writ if the state court identifies the correct
> governing legal principle from the Supreme Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's case.
> Under either standard the appropriate measuring stick is clearly
> established federal law, which means the holdings, as opposed to the
> dicta, of the Supreme Court's decisions as of the time of the relevant
> state court decision.

*Williams v. Allen,* 458 F.3d 1233, 1238 (11th Cir. 2006) (quoting *Schwab v.*

*Crosby*, 451 F.3d 1308, 1310 (11th Cir. 2006)).

## DISCUSSION

### I. Ineffective Assistance of Counsel

Gaskin argues that trial counsel's representation was ineffective during the

penalty phase because he failed to adequately investigate school and medical

records; failed to provide this information to Dr. Krop, who had been retained by

defense counsel as a mental health expert; failed to call Dr. Krop or any other

mental health expert to testify at trial; and failed to mention any statutory

6

mitigation evidence in his closing argument.

The clearly established federal law for ineffective assistance of counsel claims was set forth by the U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To establish a claim of ineffective assistance of counsel, first, "the defendant must show that counsel's performance was deficient . . . [which] requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687, 104 S. Ct. at 2064.  Second, the defendant must show that counsel's deficient performance prejudiced him.  *Id*.  That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694, 104 S. Ct. at 2068.  Furthermore, the Supreme Court held in *Strickland*:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

7

*Id*. at 690–91, 104 S. Ct. at 2066.

In this case, the State court found that trial counsel made a strategic decision not to present Dr. Krop's findings, and not to present further evidence regarding Gaskin's educational history. Counsel purposely withheld information about Gaskin's past, including school records, because he had reason to believe that it would lead to damaging testimony regarding Gaskin's past violent and criminal conduct. *Gaskin II*, 822 So. 2d at 1248. Dr. Krop testified at the 3.850 evidentiary hearing that he expressly told counsel before trial that he would not be helpful to the defense because he would be subject to cross examination regarding Gaskin's extensive history of criminal conduct, sexual deviancy, and lack of remorse.

We have held that "counsel is not required to present all mitigation evidence, even if the additional mitigation evidence would not have been incompatible with counsel's strategy. Counsel must be permitted to weed out some arguments to stress others and advocate effectively." *Haliburton v. Sec'y for Dep't of Corr.* 342 F.3d 1233, 1243–1244 (11th Cir. 2003) (internal quotation marks and citations omitted). Furthermore, a state court's finding that a decision by counsel was tactical is a finding of fact. *Bolender v. Singletary*, 16 F.3d 1547, 1558 n.12 (11th Cir. 1994). Accordingly, Gaskin has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Upon

review of Gaskin's 3.850 evidentiary hearing, and considering that Gaskin chose not to present rebuttal evidence at that hearing or in response to the state court's findings, we conclude that he has not presented clear and convincing evidence to rebut the presumption that his counsel's decisions were tactical. In fact, the evidence presented at the hearing confirms the state court's finding that counsel's decisions regarding presentation of mitigation evidence were made strategically to prevent far more damaging evidence from being introduced.

Gaskin also contends that counsel was deficient for failing to adequately investigate Gaskin's educational history, and for failing to provide educational records to Dr. Krop. We have held that when counsel "totally fails to inquire into the defendant's past or present behavior or life history" in a capital case, his conduct is deficient. *Housel v. Head*, 238 F.3d 1289, 1294 (11th Cir. 2001); *Jackson v. Herring*, 42 F.3d 1350, 1367–68 (11th Cir. 1995) (holding that representation is beneath standards of professional competence where counsel does not conduct sufficient investigation to formulate an adequate life profile of a defendant). In this case, however, trial counsel conducted some investigation into Gaskin's history, including his educational history. At the evidentiary hearing, trial counsel recalled that his co-counsel or his investigator had spoken with some of Gaskin's teachers.

9

Furthermore, even if counsel was deficient for failing to adequately investigate, Gaskin cannot meet *Strickland*'s prejudice prong. Gaskin argues that had trial counsel provided Dr. Krop with educational records prior to trial, he would have come to a different conclusion. However, Dr. Krop testified in the evidentiary hearing that after reviewing Gaskin's records post-conviction, his diagnosis remained the same as it was pretrial, with the additional diagnosis of attention deficit disorder ("ADD"). Gaskin further contends that he was inaccurately presented as an average student, and that evidence should have been presented he was a special education student with mental health problems. However, Dr. Krop testified that the school records confirmed that Gaskin had an average intellectual ability. Also, the fact remains that further investigation and further evidence would have opened the door to damaging personal history evidence. Accordingly, we cannot say that there is a reasonable probability that additional investigation would have changed trial counsel's strategy. Thus, there is not a reasonable probability that the outcome of the case would have been different but for counsel's errors.

The state court's determination that Gaskin's counsel's conduct was not ineffective or prejudicial was not contrary to, or an unreasonable application of *Strickland v. Washington*, nor was it an unreasonable application of the facts in

10

light of the evidence presented in the state habeas proceeding.

## II.    Change of Venue Due to Pervasive and Prejudicial Pretrial Publicity

Gaskin argues that he was denied a fair and impartial jury because the trial

court denied his motions to change venue due to pervasive and prejudicial pretrial

publicity.  We have previously summarized the standards that apply to this issue:

> The trial court may be unable to seat an impartial jury because of prejudicial pretrial publicity or an inflamed community atmosphere. In such a case, due process requires the trial court to grant defendant's motion for a change of venue.  This does not mean, however, that a defendant is entitled to a change of venue whenever potential jurors have been exposed to the facts of the case.
>
> It is not required that jurors be totally ignorant of the facts and issues involved.  In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases.  To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard.  It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.
>
> A defendant is entitled to a change of venue if he can demonstrate either "actual prejudice" or "presumed prejudice."  To find the existence of actual prejudice, two basic prerequisites must be satisfied.  First, it must be shown that one or more jurors who decided the case entertained an opinion, before hearing the evidence adduced at trial, that the defendant was guilty. Second, these jurors, it must be determined, could not have laid aside these preformed opinions and rendered a verdict based on the evidence presented in court.  If a defendant cannot show actual prejudice, then he must meet the demanding presumed prejudice standard.

11

Prejudice is presumed from pretrial publicity when pretrial publicity is sufficiently prejudicial and inflammatory and the prejudicial pretrial publicity saturated the community where the trials were held. *The presumed prejudice principle is rarely applicable, and is reserved for an extreme situation.* Where a petitioner adduces evidence of inflammatory, prejudicial pretrial publicity that so pervades or saturates the community as to render virtually impossible a fair trial by an impartial jury drawn from the community, jury prejudice is presumed and there is no further duty to establish bias.

*Meeks v. Moore*, 216 F.3d 951, 960–961 (11th Cir. 2000) (emphasis added) (block quotations, citations and alterations omitted); *see also Coleman v. Kemp*, 778 F.2d 1487 (11th Cir. 1985).

Gaskin argues that prejudice should be presumed in this case because of the widespread dissemination of prejudicial and inflammatory material throughout the community.[3] Gaskin argues that pretrial publicity regarding his case saturated the "rural" community of Flagler county where the crimes were committed and where he was tried. The Daytona Beach News-Journal published articles which focused

---

[3] Gaskin does not argue on appeal that there was actual prejudice in this case. In holding that the trial court had not abused its discretion in denying defendant's motion to change venue, the Florida Supreme Court noted that "[a]ll jurors who served affirmatively and unequivocally stated that they could put aside any prior knowledge and decide the case solely on the evidence presented at trial. There is nothing in the record that suggests otherwise." *Gaskin I*, 591 So. 2d at 919. Furthermore, the trial judge liberally granted challenges for cause, and gave each attorney an additional five peremptory challenges. *Id.* Defense counsel did not even use all the peremptory challenges available. *Id.* The Florida Supreme Court concluded that Gaskin did not demonstrate that he was prejudiced by any knowledge the jurors may have possessed. *Id.* at 920. Although the state court did not use the actual/presumed prejudice framework, the state court made factual findings that clearly indicate no actual prejudice, and that are unrebutted by clear and convincing evidence.

12

on Gaskin's culpability and on the heinous nature of the crimes. The articles also connected Gaskin to another murder and contained statements of law enforcement officials about the case. The trial commenced less than six months after the murders occurred. Gaskin claims that 92% of potential jurors and 11 of the 12 jurors at trial had read newspaper accounts of the crime.

However, this case is not the type of extreme situation for which we reserve a finding of presumed prejudice. Gaskin does point to articles published in the local newspaper that may have been somewhat prejudicial or inflammatory. However, he does not present strong enough evidence that prejudicial and inflammatory pretrial publicity *saturated* the community. *See Coleman*, 778 F.2d at 1537 ("[T]he burden placed upon the petitioner to show that pretrial publicity deprived him of his right to a fair trial before an impartial jury is an extremely heavy one."); *Henyard v. McDonough*, 459 F.3d 1217, 1242 (11th Cir. 2006) (per curiam)*; Spivey v. Head*, 207 F.3d 1263, 1270 (11th Cir. 2000). Accordingly, the Florida Supreme Court's determination that Gaskin's motion for change of venue was properly denied was neither "contrary to," nor "an unreasonable application" of, United States Supreme Court precedent. *See* 28 U.S.C. § 2254(d).

## CONCLUSION

For the foregoing reasons, we hold that the state court's adjudication of

13

Gaskin's claims did not result in a decision that was contrary to, or an unreasonable application of, clearly established Federal law; nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court. Accordingly, we affirm the district court's denial of Gaskin's petition.

**AFFIRMED.**