# Supreme Court of Florida

––––––––––

No. SC2023-0415

––––––––––

**LOUIS B. GASKIN,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

––––––––––

No. SC2023-0440

––––––––––

**LOUIS B. GASKIN,**
Petitioner,

vs.

**RICKY D. DIXON, etc.,**
Respondent.

April 6, 2023

PER CURIAM.

Louis B. Gaskin, a prisoner under sentences of death and an active death warrant, appeals the circuit court's denial of his third successive motion for postconviction relief. He also petitions this

Court for a writ of habeas corpus, moves for a stay of execution, and requests oral argument. We have jurisdiction. *See* art. V, §§ 3(b)(1), (9), Fla. Const. As we explain below, we affirm the summary denial of Gaskin's postconviction motion, and we deny his habeas petition, motion for stay of execution, and request for oral argument.

## BACKGROUND

The following facts were set forth in this Court's opinion on direct appeal:

> The convictions arise from events occurring on the night of December 20, 1989, when Gaskin drove from Bunnell to Palm Coast and spotted a light in the house of the victims, Robert and Georgette Sturmfels. Gaskin parked his car in the woods and, with a loaded gun, approached the house. Through a window he saw the Sturmfels[es] sitting in their den. After circling the house a number of times, Gaskin shot Mr. Sturmfels twice through the window. As Mrs. Sturmfels rose to leave the room, Gaskin shot her and then shot Mr. Sturmfels a third time. Mrs. Sturmfels crawled into the hallway, and Gaskin pursued her around the house until he saw her through the door and shot her again. Gaskin then pulled out a screen, broke the window, and entered the home. He fired one more bullet into each of the Sturmfels[es]' heads and covered the bodies with blankets. Gaskin then went through the house taking lamps, video cassette recorders, some cash, and jewelry.
> Gaskin then proceeded to the home of Joseph and Mary Rector, whom he again spied through a window sitting in their den. While Gaskin cut their phone lines,

the Rectors went to bed and turned out the lights. In an effort to roust Mr. Rector, Gaskin threw a log and some rocks at the house. When Mr. Rector rose to investigate, Gaskin shot him from outside the house. The Rectors managed to get to their car and drive to the hospital in spite of additional shots fired at their car as they sped away. Gaskin then burglarized the house.

Gaskin's involvement in the shootings was brought to the attention of the authorities by Alfonso Golden, cousin of Gaskin's girlfriend. The night of the murders, Gaskin had appeared at Golden's home and asked to leave some "Christmas presents." Gaskin told Golden that he had "jacked" the presents and left the victims "stiff." Golden learned of the robberies and murders after watching the news and called the authorities to report what he knew. The property that had been left with Golden was subsequently identified as belonging to the Sturmfels[es].

Gaskin was arrested on December 30, and a search of Gaskin's home produced more of the stolen items. After signing a rights-waiver form, Gaskin confessed to the crimes and directed the authorities to further evidence of the crime in a nearby canal.

*Gaskin v. State*, 591 So. 2d 917, 918 (Fla. 1991).

After a jury trial, Gaskin was convicted of nine of the ten counts for which he was indicted. As to Mr. and Mrs. Sturmfels, Gaskin was convicted of two counts of first-degree premeditated murder, two counts of felony murder, one count of armed robbery, and one count of burglary. *Id.* As to Mr. and Mrs. Rector, Gaskin was convicted of one count for the attempted first-degree murder of Joseph Rector, one count of armed robbery, and one count of

- 3 -

burglary.  *Id.*  The jury acquitted Gaskin of the attempted first-degree murder of Mary Rector.  *Id.*

During the penalty phase, the State presented evidence in the form of a ballistics demonstration, "firing various types of bullets from the rifle used in the murders to demonstrate that the ammunition Gaskin chose to use in the murders supports a finding that the murders were heinous, atrocious, or cruel."  *Id.* at 918-19. The defense presented penalty phase testimony of "Janet Morris, Gaskin's cousin, who testified that she and Gaskin were raised by their great-grandparents, who were very strict, and that Gaskin never gave anyone any trouble during his formative years."  *Id.* at 919.

The jury recommended that Gaskin be sentenced to death for the Sturmfelses' murders by votes of eight to four.  *Id.*  For additional consideration in sentencing, the trial court also received "a certified judgment and sentence for an unrelated burglary, a copy of Gaskin's statement, and a copy of a psychiatric report."  *Id.*

The trial court found three aggravating factors as to both murders: (1) the murder was cold, calculated, and premeditated, without any pretense of moral or legal justification, (2) Gaskin was

previously convicted of another capital offense or of a felony involving the use or threat of violence (prior violent felony based on the contemporaneous murders of the Sturmfelses and the other felony convictions relating to the Sturmfelses and the Rectors), and (3) the murders were committed while Gaskin was engaged in the commission of a robbery or burglary. *Id.* A fourth aggravating factor, that the murder was especially wicked, evil, atrocious, or cruel, was found as to victim Georgette Sturmfels. *Id.*

The trial court found as mitigating circumstances that (1) the murders were committed while Gaskin was under extreme mental or emotional disturbance, and (2) Gaskin suffered a deprived childhood. *Id.*

Gaskin challenged his convictions and sentences on direct appeal. Because he was improperly convicted of and sentenced for four counts of first-degree murder—premeditated and felony murder as to each of the Sturmfelses—this Court affirmed two of the first-degree murder convictions and sentences, remanded to the trial court to vacate the other two, and affirmed the remaining convictions and sentences. *Id.* at 922. Gaskin then successfully petitioned the United States Supreme Court for review, which, due

- 5 -

to the unconstitutionally vague jury instruction on the "especially wicked, evil, atrocious, or cruel" aggravating factor, remanded the case to this Court for reconsideration in light of *Espinosa v. Florida*, 505 U.S. 1079 (1992). *See Gaskin v. Florida*, 505 U.S. 1216 (1992). Upon remand, this Court held that Gaskin did not preserve the issue but that even if it had been preserved, the error was harmless as to the murder of Georgette Sturmfels given the other aggravating factors in the case. *See Gaskin v. State*, 615 So. 2d 679, 680 (Fla. 1993).

Since that time, Gaskin has unsuccessfully challenged his convictions and sentences in state and federal court. *See Gaskin v. State*, 737 So. 2d 509 (Fla. 1999) (initial postconviction appeal affirming the denial of relief on certain claims and remanding for an evidentiary hearing on ineffective assistance of counsel claims); *Gaskin v. State*, 822 So. 2d 1243 (Fla. 2002) (initial postconviction appeal upon remand, affirming the denial of relief on Gaskin's ineffective assistance of counsel claims); *Gaskin v. State*, 218 So. 3d 399 (Fla. 2017) (opinion affirming the denial of first successive postconviction motion); *Gaskin v. State*, 237 So. 3d 928 (Fla. 2018) (opinion affirming the denial of second successive postconviction

motion); *Gaskin v. State*, 2020 WL 57987 (Fla. Jan. 6, 2020) (order dismissing pro se all writs petition); *Gaskin v. State*, 2020 WL 2467112 (Fla. May 13, 2020) (order dismissing pro se all writs petition); *Gaskin v. Sec'y, Dept. of Corr.*, 494 F.3d 997 (11th Cir. 2007) (opinion affirming the denial of federal habeas petition).

Governor Ron DeSantis signed Gaskin's death warrant on March 13, 2023. Pursuant to Florida Rule of Criminal Procedure 3.851, Gaskin filed a third successive motion for postconviction relief and argued the following claims: (1) Gaskin's death sentences violate his constitutional rights because his jury was never presented with mitigation that would have resulted in recommendations of life imprisonment; (2) Gaskin's constitutional rights were violated because the jury was not unanimous in finding applicable aggravating circumstances and in recommending death, and this Court's decision on the partial retroactivity of *Hurst*[1] was arbitrary and capricious; (3) the delay between Gaskin's clemency proceedings and the denial of clemency without any updated proceedings violated Gaskin's constitutional rights; and (4) it is

---

1. *Hurst v. Florida*, 577 U.S. 92 (2016).

unconstitutional to execute Gaskin after almost thirty-three years of living on death row in near-total solitary confinement.

After holding a *Huff*[2] hearing, the circuit court summarily denied relief on all four claims. Gaskin now appeals that denial and raises three issues. He also petitions this Court for a writ of habeas corpus, moves for a stay of execution, and requests oral argument.

**ANALYSIS**

**Gaskin's Third Successive Motion for Postconviction Relief**

Gaskin argues that the circuit court erred in its summary denial of his third successive motion for postconviction relief, and he raises three issues in this appeal: (1) Gaskin's death sentences and execution are unconstitutional because the mitigating circumstances in his case outweigh the aggravating factors, exempting him from the class of persons subject to the death penalty; (2) Gaskin's death sentences and execution are unconstitutional because his jury failed to make specific findings regarding the aggravating factors and mitigating circumstances, and the jury did not unanimously recommend that he be sentenced

2. *Huff v. State*, 622 So. 2d 982 (Fla. 1993).

to death (*Hurst* claim); and (3) executing Gaskin after more than thirty years on death row violates the Eighth Amendment's prohibition of cruel and unusual punishment.

## Standard of Review

Gaskin's successive postconviction claims are governed by Florida Rule of Criminal Procedure 3.851. In particular, a motion for postconviction relief must set forth the type of relief the defendant seeks, *see* rule 3.851(e)(1)(C), and it must include "a detailed allegation of the factual basis for any claim for which an evidentiary hearing is sought." Fla. R. Crim. P. 3.851(e)(1)(D). Whenever the movant makes a facially sufficient claim that requires a factual determination, the movant is entitled to an evidentiary hearing. However, rule 3.851(f)(5)(B) permits the denial of a successive postconviction motion without an evidentiary hearing "[i]f the motion, files, and records in the case conclusively show that the movant is entitled to no relief."

Because the circuit court denied Gaskin's third successive rule 3.851 motion without holding an evidentiary hearing, this Court reviews the circuit court's decision de novo, "accepting the movant's factual allegations as true to the extent they are not

- 9 -

refuted by the record, and affirming the ruling if the record conclusively shows that the movant is entitled to no relief." *Pardo v. State*, 108 So. 3d 558, 561 (Fla. 2012) (quoting *Gore v. State*, 91 So. 3d 769, 774 (Fla. 2012)).

## Mitigating Circumstances

Gaskin argues that his death sentences are unconstitutional because the mitigating circumstances outweigh the aggravating factors in his case. In particular, he contends that the jury was not presented with mitigating evidence that had it been presented, would have resulted in sentences of life imprisonment for the murders. Gaskin asserts that defense counsel failed to investigate and present mental health mitigation in the form of expert and lay testimony that would have more fully informed the jury of various mental health challenges. Additionally, he contends that the defense mental health expert, who was hired by defense counsel but never called to testify at trial, was not provided the information necessary to develop a full mental health profile. During the death warrant proceedings in the circuit court, Gaskin sought an evidentiary hearing to present mental health expert testimony, but postconviction counsel acknowledged at the *Huff* hearing that the

- 10 -

expert's testimony would not have been offered as newly discovered evidence.

The circuit court did not err in summarily denying this claim because it is procedurally barred. Gaskin raised this claim in his initial motion for postconviction relief, and it was fully considered by the circuit court and this Court. Although the circuit court summarily denied the claim at first, this Court remanded Gaskin's case for an evidentiary hearing to consider whether defense counsel was ineffective for (1) failing to investigate and present certain mitigating evidence, (2) failing to provide information to defense experts, and (3) failing to call certain witnesses to testify on his behalf.[3] Following the evidentiary hearing, the circuit court denied Gaskin's initial motion for postconviction relief, and this Court affirmed.

Even if Gaskin's claim was not procedurally barred, he still would not be entitled to relief. In denying initial postconviction relief, the circuit court concluded that defense counsel made

---

3. An additional claim, regarding counsel's status as a deputy sheriff, was also granted an evidentiary hearing, but Gaskin did not later appeal the circuit court's denial of that claim.

- 11 -

reasonable strategic decisions not to present certain evidence and the testimony of certain witnesses because that would have resulted in the jury hearing highly negative information about Gaskin. This Court explained:

> In the order denying relief, the trial court addressed Gaskin's allegation that trial counsel should have called mental health experts to testify at the penalty phase about mental mitigation. The trial court noted that Dr. Krop, one of the defense mental health experts at trial, testified at the evidentiary hearing that he expressly told counsel before trial that he would not be of much help to the defense because he would have to testify about Gaskin's extensive history of past criminal conduct, sexual deviancy, and lack of remorse. The trial court also stated that trial counsel testified at the hearing that he made a strategic decision not to present mental health experts precisely because Gaskin's background contained many negatives (including Dr. Krop's proposed testimony).

*Gaskin*, 822 So. 2d at 1247-48. The trial court found that counsel conducted a reasonable investigation before trial and "made a reasonable, strategic decision not to present this information to the jury and not to present Dr. Krop's findings to the judge." *Id.* at 1248.

As to Gaskin's argument that counsel should have presented the testimony of additional lay witnesses, the trial court observed

- 12 -

that the testimony of such witnesses, offered at the evidentiary hearing, produced the following:

> [T]here was testimony regarding the Defendant sexually forcing himself on a six-year-old boy, the Defendant's consensual, incestuous relationships and sexual deviancy, including bestiality, the Defendant's violent attempt to sexually force himself on his former girlfriend, the Defendant's admission that he loved to kill and that he killed cats and snakes, and his history of stealing at school and from his great-grandparents.

*Id.* The trial court concluded that counsel reasonably decided not to present testimony relating to Gaskin's violent past and criminal conduct because the jury may have considered it additional aggravation. *Id.*

This Court affirmed, concluding that counsel's strategy regarding mitigating evidence was reasonable: "It is apparent from the record that the witnesses who Gaskin alleges should have testified on his behalf were subject to being cross-examined about disturbing information about Gaskin, which would have defeated trial counsel's strategy." *Id.* at 1249.

Gaskin concedes in his initial brief that this issue is procedurally barred but argues that constitutional infirmities afflict his case and are sufficient to overcome a procedural bar. However,

we reject this argument and conclude that Gaskin's constitutional arguments are insufficient to overcome the procedural bar. The circuit court did not err in denying an evidentiary hearing on this claim, which was previously raised and considered, and is conclusively refuted by the record.

### *Hurst*

Gaskin next argues that he is entitled to relief pursuant to *Hurst v. Florida* and section 921.141, Florida Statutes. He maintains that he was unconstitutionally denied a jury determination, proof of aggravating factors beyond a reasonable doubt, unanimity as to aggravating factors, and unanimous jury recommendations of death. He argues that this amounts to a violation of his Eighth Amendment rights and his right to equal protection under the Fourteenth Amendment.

This issue is procedurally barred, as it was raised and addressed in Gaskin's first and second successive motions for postconviction relief. Gaskin first sought postconviction relief following the United States Supreme Court's decision in *Hurst v. Florida,* and again following this Court's decision in *Hurst v. State*, 202 So. 3d 40 (Fla. 2016). Appealing the circuit court's denial of

both successive motions, this Court affirmed on the grounds that *Hurst* is not retroactive to Gaskin's sentences, which became final before *Ring v. Arizona*, 536 U.S. 584 (2002), was decided. *See Gaskin*, 218 So. 3d at 401 (Fla. 2017), *cert. denied*, 138 S. Ct. 471 (2017); *Gaskin*, 237 So. 3d at 929 (Fla. 2018), *cert. denied*, 139 S. Ct. 327 (2018).

This Court has repeatedly rejected similar arguments relating to the retroactivity of *Hurst*. *See, e.g.*, *Hitchcock v. State*, 226 So. 3d 216, 217 (Fla. 2017); *Lambrix v. State*, 227 So. 3d 112, 113 (Fla. 2017); *Bogle v. State*, 213 So. 3d 833, 855 (Fla. 2017); *Asay v. State*, 210 So. 3d 1, 22 (Fla. 2016).

Moreover, in *State v. Poole*, 297 So. 3d 487, 504-05 (Fla. 2020), this Court held that unanimous jury recommendations of death are not required. Rather, what is required is the finding of one or more aggravating factors beyond a reasonable doubt. *See id.* at 502-03 ("Under longstanding Florida law, there is only one eligibility finding required: the existence of one or more statutory aggravating circumstances."). The jury found Gaskin guilty of the contemporaneous murders of the Sturmfelses, in addition to multiple other felonies including armed robbery and burglary.

These unanimous findings by the jury establish the existence of two aggravating factors: prior violent felony and murder committed while engaged in the commission of a robbery or burglary. Thus, these findings satisfy the requirements in *Poole*.

Additionally, Gaskin's equal protection argument is a further attempt to challenge this Court's consistent holding on *Hurst* retroactivity. This argument is also procedurally barred and has previously been rejected by this Court. *See Lambrix*, 227 So. 3d at 113. The circuit court's summary denial of Gaskin's *Hurst* claim was proper.

## Length of Time on Death Row

Gaskin also argues that executing him after he has spent more than three decades on death row, and most of that time in what he deems solitary confinement, constitutes cruel and unusual punishment.

However, this Court has repeatedly rejected the argument that a lengthy stay on death row amounts to cruel and unusual punishment. Gaskin concedes that recently, this Court observed that "[n]o federal or state court has accepted the argument that a prolonged stay on death row constitutes cruel and unusual

- 16 -

punishment." *Dillbeck v. State*, 48 Fla. L. Weekly S32 (Fla. Feb. 16, 2023) (quoting *Booker v. State*, 969 So. 2d 186, 200 (Fla. 2007)). Gaskin has argued no grounds for departing from this precedent.

We also reject Gaskin's arguments regarding what he characterizes as solitary confinement on death row. In fact, noting the similarities to the recent *Dillbeck* death warrant case, Gaskin further concedes: "Mr. Gaskin recognizes that his conditions were similar, if not identical, to Mr. Dillbeck's, up to and including the length of their stays on death row, however, he asserted this claim to exhaust for further review." The circuit court properly summarily denied relief.

## Habeas Claim

In his habeas petition, Gaskin argues that he is entitled to relief because during the penalty phase, the jury was unconstitutionally instructed that it may consider whether "the crime for which the Defendant is to be sentenced was especially wicked, evil, atrocious, or cruel." The trial court found the existence of the aggravating factor as to Georgette Sturmfels but rejected it as to Robert Sturmfels.

After the United States Supreme Court remanded Gaskin's case for reconsideration in light of *Espinosa*, this Court concluded that the issue was not preserved. This Court further concluded that even if the issue had been preserved, any error in finding the aggravating factor as to the murder of Georgette Sturmfels was harmless.

Presently, Gaskin challenges this Court's conclusion that he did not properly preserve the jury instruction issue and contends that he did argue the unconstitutionality of the aggravating factor in a pretrial motion. He also argues that this Court's conclusion that he did not object at trial cannot be conclusively determined because relevant discussions may be missing from the record. Gaskin maintains that the jury improperly considered the unconstitutionally vague instruction as to both murders, and that he is entitled to relief.

Habeas corpus is not to be used to litigate or relitigate issues which could have been, should have been, or were previously raised. *See, e.g.*, *Breedlove v. Singletary*, 595 So. 2d 8, 10 (Fla. 1992).

Where this Court has previously ruled that the *Espinosa* error as to Georgette Sturmfels was harmless, *see Gaskin,* 615 So. 2d at 680, we do not revisit that ruling.

However, we recognize that this Court did not address the *Espinosa* error as to Robert Sturmfels, even though the following argument was made by appellate counsel in the initial brief on remand from the United States Supreme Court:

> The fact that the trial court did not find HAC present in one of the murders does not render the error harmless as to that sentence. Even though the trial court did not find it, the jury returned a death recommendation (eight to four on both murders) after hearing the unconstitutional *Espinosa* instruction. *Sochor, supra.* Likewise, after hearing the trial court's "blanket" statement that he would impose the death penalty even if this aggravating circumstance were stricken, means absolutely nothing.

We must presume that this Court rejected this argument. However, because the jury was given the unconstitutional instruction as to both murders, we will explain the harmless error analysis implicit in this Court's earlier decision.

Although the jury was erroneously instructed on the "especially wicked, evil, atrocious, or cruel" aggravating factor, the error is also harmless as to Robert Sturmfels. Affirmance of

Gaskin's sentence is required if "there is no reasonable possibility that the error contributed to the" death sentence. *State v. DiGuilio*, 491 So. 2d 1129, 1138 (Fla. 1986).

We conclude that there is no reasonable possibility that the error contributed to the death sentence for the murder of Robert Sturmfels in light of the substantial aggravation in this case: the extremely weighty (1) prior violent felony, and (2) cold, calculated, and premeditated factors, *see Bush v. State*, 295 So. 3d 179, 215 (Fla. 2020), and (3) the murder occurred during the commission of a robbery or burglary factor.

As such, we deny Gaskin's habeas petition.

### Motion for Stay of Execution

Gaskin argues that more time is needed to resolve the complex issues he raises in his appeal and habeas petition. However, we disagree. Because Gaskin has failed to raise substantial grounds upon which relief might be granted, a stay is not appropriate here. *See Buenoano v. State*, 708 So. 2d 941, 952 (Fla. 1998) (denying motion for stay of execution where movant failed to establish "substantial grounds upon which relief might be granted").

# CONCLUSION

For these reasons, we affirm the denial of Gaskin's third successive motion for postconviction relief. We also deny his petition for a writ of habeas corpus and his motion for a stay of execution. We also deny his request for oral argument.

No rehearing will be entertained by this Court, and the mandate shall issue immediately.

It is so ordered.

MUÑIZ, C.J., and CANADY, COURIEL, GROSSHANS, and FRANCIS, JJ., concur.
LABARGA, J., concurs in result.

An Appeal from the Circuit Court in and for Flagler County,
    Terence R. Perkins, Judge
    Case No. 181990CF000001AXXXXX
And an Original Proceeding – Habeas Corpus

Eric Pinkard, Capital Collateral Regional Counsel, Tracy M. Henry and Cortney L. Hackett, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

    for Appellant/Petitioner

Ashley Moody, Attorney General, Tallahassee, Florida, Doris Meacham, Senior Assistant Attorney General, Daytona Beach, Florida, and Patrick Bobek, Assistant Attorney General, Daytona Beach, Florida,

    for Appellee/Respondent