822 So.2d 1243 (2002)
Louis B. GASKIN, Appellant,
v.
STATE of Florida, Appellee.
No. SC00-2025.
Supreme Court of Florida.
June 13, 2002.
*1245 Bill Jennings, Capital Collateral Regional CounselMiddle; Dwight M. Wells, Assistant CCRC, and Carol C. Rodriguez, Assistant CCRC, Capital Collateral Regional CounselMiddle Region, Tampa, FL, for Appellant.
*1246 Robert A. Butterworth, Attorney General, and Scott A. Browne, Assistant Attorney General, Tampa, FL, for Appellee.
PER CURIAM.
Louis B. Gaskin, a prisoner under the sentence of death, appeals an order entered by the trial court denying his postconviction motion filed pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons set forth below, we affirm the trial court's denial of postconviction relief.

STATEMENT OF THE CASE AND FACTS
The facts of this case are set forth in Gaskin v. State, 591 So.2d 917, 918 (Fla. 1991). The procedural history in this case is set forth in Gaskin v. State, 737 So.2d 509, 511-12 (Fla.1999). In that case, we found that the trial court erred by summarily denying what were essentially four ineffective assistance of counsel postconviction claims, and we remanded the case for an evidentiary hearing on those claims. See id. at 518.[1] After holding an evidentiary hearing, the trial court entered an order denying Gaskin relief as to all of the ineffective assistance of counsel claims. Gaskin appeals the trial court's denial of three of those claims.[2]

3.850 APPEAL
Gaskin's claims on appeal from the denial of his 3.850 motion are paraphrased as follows: (1) counsel was ineffective for failing to adequately investigate and present important mitigating evidence; (2) counsel was ineffective for failing to provide experts with sufficient background information so that they could properly assess Gaskin's mental condition; and (3) counsel was ineffective for failing to address aggravating and mitigating factors in the penalty phase closing argument to the jury.
In order to prove a claim of ineffective assistance of counsel, a defendant must establish two elements:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable *1247 probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052.[3] When evaluating ineffective assistance of counsel claims on appeal, this Court will evaluate whether the alleged errors undermine our confidence in the outcome of the proceedings. See Rose v. State, 675 So.2d 567, 574 (Fla. 1996). Ineffective assistance of counsel claims present a mixed question of law and fact subject to plenary review based on the Strickland test. See Stephens v. State, 748 So.2d 1028, 1033 (Fla.1999). This requires an independent review of the trial court's legal conclusions, while giving deference to the trial court's factual findings. See id.

MENTAL MITIGATION EVIDENCE
Gaskin argues that counsel was ineffective during the penalty phase of his trial for failing to investigate and present mitigating testimony of mental health experts and additional lay witnesses. Gaskin alleges trial counsel should have presented more penalty phase witnesses to testify about Gaskin's problems in school, his mental health problems, and his environmental problems.[4] To prevail on this claim, Gaskin must demonstrate that but for counsel's errors, he probably would have received a life sentence. See Hildwin v. Dugger, 654 So.2d 107, 109 (Fla. 1995). Such a demonstration is made if "counsel's errors deprived [defendant] of a reliable penalty phase proceeding." Id. at 110.[5] Trial counsel has a duty to conduct reasonable investigation into the defendant's background for possible mitigating evidence. See Rose v. State, 675 So.2d 567, 571 (Fla.1996). However, we have also stated, "The failure to investigate and present available mitigating evidence is a relevant concern along with the reasons for not doing so." Rose, 675 So.2d at 571 (citing Hildwin).
In the order denying relief, the trial court addressed Gaskin's allegation that *1248 trial counsel should have called mental health experts to testify at the penalty phase about mental mitigation. The trial court noted that Dr. Krop, one of the defense mental health experts at trial, testified at the evidentiary hearing that he expressly told counsel before trial that he would not be of much help to the defense because he would have to testify about Gaskin's extensive history of past criminal conduct, sexual deviancy, and lack of remorse. The trial court also stated that trial counsel testified at the hearing that he made a strategic decision not to present mental health experts precisely because Gaskin's background contained many negatives (including Dr. Krop's proposed testimony).[6]
The trial court denied relief as to this claim, stating:
This Court finds that counsel was not deficient because counsel did conduct a reasonable investigation of mental health mitigation prior to trial and made a reasonable, strategic decision not to present this information to the jury and not to present Dr. Krop's findings to the judge. Therefore, this claim is also legally insufficient.
In the order denying relief, the trial court also addressed Gaskin's allegation that additional lay witnesses should have been called during the penalty phase to testify about mitigating evidence. At the evidentiary hearing Gaskin presented the testimony of friends, family members, former teachers, and school administrators. Their testimony revealed the following facts as related by the trial court:
[T]here was testimony regarding the Defendant sexually forcing himself on a six-year-old boy, the Defendant's consensual, incestuous relationships and sexual deviancy, including bestiality, the Defendant's violent attempt to sexually force himself on his former girlfriend, the Defendant's admission that he loved to kill and that he killed cats and snakes, and his history of stealing at school and from his great-grandparents.
The trial court remarked in its order that trial counsel testified at the evidentiary hearing that he purposely chose to keep Gaskin's past violent and criminal conduct from the jury because he felt that the jury would consider Gaskin's past (including school records) as aggravating circumstances. Thus, the trial court found "that counsel made a reasonable strategic decision not to present this nonstatutory, nonmental health mitigation."
Trial counsel will not be held to be deficient when she makes a reasonable strategic decision to not present mental mitigation testimony during the penalty phase because it could open the door to other damaging testimony. See Ferguson v. State, 593 So.2d 508, 510 (Fla.1992) (finding that counsel's decision to not put on mental health experts was a "reasonable strategy in light of the negative aspects of the expert testimony" because the experts had indicated that they thought that the defendant was malingering, a sociopath, and a very dangerous person); see also State v. Bolender, 503 So.2d 1247, 1250 (Fla.1987) (holding that "[s]trategic *1249 decisions do not constitute ineffective assistance if alternative courses of action have been considered and rejected"). It is apparent from the record that the witnesses who Gaskin alleges should have testified on his behalf were subject to being cross-examined about disturbing information about Gaskin, which would have defeated trial counsel's strategy. We find no error in the trial court's conclusion that counsel acted reasonably by not putting on evidence that would open the door to other damaging testimony about Gaskin. See Robinson v. State, 707 So.2d 688, 697 (Fla. 1998) (noting that the trial court could have concluded that trial counsel was not ineffective in not opening the door to potentially devastating rebuttal evidence); Medina v. State, 573 So.2d 293, 298 (Fla. 1990) (finding no ineffectiveness for counsel's choice not to present witnesses who would have opened the door for the State to cross-examine them about the defendant's violent past).
However, even if trial counsel was deficient for failing to investigate mental mitigation more thoroughly or to present mental mitigation in this case, Gaskin is unable to meet the Strickland prejudice prong in this claim. As we stated in Rose, "[S]evere mental disturbance is a mitigating factor of the most weighty order, and the failure to present it in the penalty phase may constitute prejudicial ineffectiveness." 675 So.2d at 573 (citations omitted). In this case, the trial court also concluded that Gaskin had not met the Strickland prejudice prong, stating:
[I]n light of the eight-to-four vote recommending death without hearing about the Defendant's prior violent and criminal conduct, sexual deviancy, and lack of remorse, there is no reasonable probability that Dr. Krop's testimony regarding nonstatutory mitigation would have outweighed the substantial and compelling aggravation of prior violent felonies, commission during a robbery or burglary, CCP, and HAC.
Due to the fact that most of the witnesses who testified at the evidentiary hearing admitted on cross-examination that they were aware of other, very negative information about Gaskin, we agree with the trial court that Gaskin has not demonstrated that he was deprived of a reliable penalty phase proceeding. See Breedlove v. State, 692 So.2d 874, 877 (Fla.1997) (stating that the presentation of lay witnesses to address Breedlove's father's drug addiction and his beatings of Breedlove would have allowed cross-examination and rebuttal evidence that would have countered any value of that information); Rose v. State, 617 So.2d 291, 295 (Fla.1993) ("In light of the harmful testimony that could have been adduced from Rose's brother and the minimal probative value of the cousins' testimony, we are convinced that the outcome would not have been different had their testimony been presented at the penalty phase."). We also note the trial court's conclusion that the statutory aggravators that were found in this case would have overwhelmed any mitigating testimony that the lay witnesses would provide. See Breedlove, 692 So.2d at 878.[7]
Further, despite what Gaskin characterizes as counsel's deficient performance for failing to investigate and present mental mitigation, the trial court did find two *1250 mental mitigators: the murders were committed while Gaskin was under the influence of extreme mental or emotional disturbance and Gaskin had a deprived childhood. At the evidentiary hearing, defense expert Dr. Toomer testified that if he had testified at trial, he would have expressed his opinion that Gaskin lacked the ability to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law at the time of the murders. However, State expert Dr. Rotstein previously opined that the same mitigator applied in this case. Dr. Rotstein's report was presented to the trial court during the penalty phase, yet the trial court chose to reject this mitigator. See Gaskin, 591 So.2d at 921-22.
We have held that counsel's reasonable mental health investigation is not rendered incompetent "merely because the defendant has now secured the testimony of a more favorable mental health expert." Asay v. State, 769 So.2d 974, 986 (Fla. 2000). In this case, Dr. Toomer's testimony represents not only a recent and more favorable defense expert opinion, but a cumulative opinion to one that was already presented to the trial court.
The trial court was also not convinced that Gaskin would have received a life sentence if the evidentiary hearing testimony had been presented at trial because the new evidence merely included much cumulative information that had already been considered and rejected by the trial court, and the new information painted a much more negative and prejudicial picture of Gaskin. The fact that mental health experts and more lay witnesses were not called during the penalty phase does not undermine our confidence in the outcome of this proceeding. Thus, we affirm the trial court's denial of relief as to this claim.

BACKGROUND INFORMATION
In Gaskin's second claim, he argues that trial counsel was ineffective for failing to provide Dr. Krop with requested background information. The trial court denied relief on this claim, stating:
Dr. Krop testified that the school records were the only information he was unaware of for his initial evaluations and diagnosis of the Defendant.... Dr. Krop also testified that his diagnosis of the Defendant would be the same as it was originally on June 8, 1990, only four (4) days after his deposition, with the addition of the opinion that the Defendant suffers from a learning disability, attention deficit disorder, based on the school records.
The trial court found that Gaskin did not establish that he suffered any actual prejudice from counsel's failure to give Dr. Krop school records. The trial court held: "[I]n light of Dr. Krop's postconviction testimony, there is not a reasonable probability that Dr. Krop's diagnosis would have been different; it was the same with only one minor additiona learning disability, a nonstatutory mitigator."
We find no error in the trial court's determination that Gaskin has not suffered prejudice from counsel's alleged deficient performance. As the trial court noted, because Dr. Krop testified at the evidentiary hearing that his diagnosis of Gaskin would have changed little if counsel had given him Gaskin's school records, Gaskin has not met his burden of showing that but for counsel's alleged deficiency, the result of the penalty phase would have been different. See Breedlove v. State, 692 So.2d 874, 877 (Fla.1997) (holding that because the psychologists testified that their opinions would remain unchanged even considering the additional information, there was not a reasonable probability that the result of the penalty phase would have *1251 been different); see also Brown v. State, 755 So.2d 616, 636 (Fla.2000) (holding that trial counsel's performance was not deficient for failing to give a mental health expert additional information because the expert testified at the evidentiary hearing that the collateral data would not have changed his testimony). The fact remains that even if Dr. Krop had the benefit of the school records, he still possessed a wealth of damaging information about Gaskin that counsel did not want the jury to hear. The fact that trial counsel did not give Dr. Krop school records, which indicated that Gaskin suffered from a learning disability, does not undermine our confidence in the outcome of the proceedings when considered in light of all the information before the trial court. Thus, we affirm the trial court's denial of this claim.

CLOSING ARGUMENT
In Gaskin's third and final ineffective assistance of counsel claim, he alleges that trial counsel was ineffective for the way he delivered the closing argument during the penalty phase. Gaskin alleges that trial counsel was deficient because he gave an extremely short argument, did not discuss the aggravators, only briefly mentioned mitigation, and characterized Gaskin as a "sociopath."
In its order denying relief, the trial court found that trial counsel appealed to the jury to spare Gaskin's life and that he brought up Gaskin as a sociopath just to point out that there was no evidence in the record to support that Gaskin was a sociopath. The trial court denied relief as to this claim, stating:
This Court finds that, in light of counsel's reasonable strategy to keep out the Defendant's past violent and criminal conduct, sexual deviancy, and lack of remorse by not presenting extensive mitigation evidence, and in light of the State's closing argument, as well as the evidence presented regarding the manner in which the murders were committed, counsel's performance during closing argument was not deficient.... [T]here is not a reasonable probability that the outcome of the penalty phase proceeding would have been different if counsel, during closing argument, would have fully addressed all of the statutory aggravators and stated more regarding the mitigation evidence that was presented, especially in light of the compelling and substantial aggravators proven beyond a reasonable doubt, i.e. prior violent felonies, commission during a robbery or burglary, CCP, and HAC.
Although Gaskin now states that he would have wanted counsel to discuss the relevant aggravators and mitigators at more length, this does not necessarily render trial counsel ineffective. See Cherry v. State, 659 So.2d 1069, 1073 (Fla.1995) ("The standard is not how present counsel would have proceeded, in hindsight, but rather whether there was both a deficient performance and a reasonable probability of a different result."); see also Strickland, 466 U.S. at 689, 104 S.Ct. 2052 ("Even the best criminal defense attorneys would not defend a particular client in the same way.").
We find no error in the trial court's rejection of this claim in light of the defense strategy to emphasize the positive facts about Gaskin, and to de-emphasize the negative aspects about him. See Ferguson v. State, 593 So.2d 508, 511 (Fla.1992), ("Although in hindsight one can speculate that a different argument may have been more effective, counsel's argument does not fall to the level of deficient performance simply because it ultimately failed to persuade the jury.").
Again, however, even if we were to conclude that trial counsel was deficient for giving the allegedly poor closing argument, *1252 Gaskin has not fulfilled the Strickland prejudice prong in this claim. This is not a case in which trial counsel essentially argued that the jury had no alternative but to recommend a death sentence. Cf. Clark v. State, 690 So.2d 1280, 1283 (Fla.1997). When considered within the context of the entire penalty phase closing argument, trial counsel's statements during closing argument were not disparaging of his client, as evidenced through his statements that Gaskin was not a sociopath, that he was normal and "intelligent," and that Gaskin's becoming violent was a "tragedy," but that society would not be better by killing him. In view of the extreme aggravation established in this case, we find no error in the trial court's conclusion that counsel's decision not to further discuss the four aggravators during closing arguments was not so deficient as to undermine confidence in the outcome of the proceedings.
Based on the foregoing, we affirm the trial court's denial of 3.850 relief.
It is so ordered.
SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS, and QUINCE, JJ., concur.
WELLS, C.J., concurs in result only.
NOTES
[1] The four ineffective assistance of counsel claims alleged the following: (1) counsel failed to investigate and present important mitigating evidence during the penalty phase; (2) counsel failed to give the defense mental health expert, Dr. Krop, the background information that he requested; (3) counsel failed to mention the aggravating or mitigating circumstances during the penalty phase closing arguments; and (4) counsel had a conflict of interest arising from his status as a deputy sheriff. See Gaskin, 737 So.2d at 514-517.
[2] Gaskin does not appeal the trial court's denial of the claim that counsel was ineffective due to a conflict of interest arising from his status as a deputy sheriff.
[3] It is important to note that the reasonable probability language used herein is not synonymous with the "more likely than not" standard invoked when a defendant asserts entitlement to a new trial on the basis of newly discovered evidence. In rejecting the higher standard placed on newly discovered evidence cases, the Strickland court explained, "[W]e believe that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." 466 U.S. at 693, 104 S.Ct. 2052. As Justice Souter has noted: "Despite our repeated explanation of the shorthand formulation in these words, the continued use of the term `probability' raises an unjustifiable risk of misleading courts into treating it as akin to the more demanding standard, `more likely than not.'" Strickler v. Greene, 527 U.S. 263, 298, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (Souter, J., concurring in part and dissenting in part). All involved in the criminal justice system should take note of Justice Souter's cautionary warning.
[4] In its order denying relief, the trial court summarized the mitigating evidence that Gaskin alleged trial counsel should have presented to the jury:

(1) [T]hat his mother was an unwed teenager; (2) that he was raised by his elderly great-grandparents who abused him and forced him to eat off the floor; (3) that at the age of 13, he would hide under the bed and had to be physically pulled out, and, one time, during which he was foaming at the mouth; (4) that he was exposed to incestuous sexual activity at a young age; (5) that as a teenager, he was arrested for stealing a bicycle and exhibited suicidal tendencies by playing with dangerous snakes and playing Russian Roulette with a loaded revolver; (6) that he failed the third and sixth grades and dropped out of school after the eighth grade; (7) that he suffers from longstanding, severe mental health disorders including organic brain damage, schizotypal personality disorder, and schizophrenia.
[5] See supra note 3 (discussing Justice Souter's caution in Strickler).
[6] Although the State's mental health expert, Dr. Rotstein, opined in his report that Gaskin's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired, counsel considered calling Dr. Rotstein to testify, but decided against it. Trial counsel took the court reporter into the holding cell to make this conversation with his client part of the record before the penalty phase. Trial counsel advised Gaskin that he did not want to call Dr. Rotstein to testify because he did not want the jury to hear on cross-examination about Gaskin's sexual deviancy and prior crimes. Gaskin agreed that Dr. Rotstein should not be called to testify.
[7] The trial court found the following aggravators in this case: (1) both murders were committed in a cold, calculated, and premeditated manner; (2) Gaskin had previously been convicted of another capital offense or of a felony involving the use or threat of violence; (3) the murders were committed while the defendant was engaged in the commission of a robbery or burglary; and (4) the murder of Mrs. Sturmfels was "especially wicked, evil, atrocious, or cruel." See Gaskin, 591 So.2d at 919.