HARRIS, C., Senior Judge,
dissenting.
Because I believe the trial judge made the appropriate decision, perhaps for the wrong reason[1] (the very purpose of the tipsy coachman rule), I would affirm his granting the new trial. In order for us to properly resolve this matter, it is necessary that we go back to the beginning.
In 1994, Bush and Mott were at a wedding reception. Mott’s boyfriend left early and Mott needed a ride home. Bush offered to take her home and she agreed. There were some stops along the way. First, with another passenger, they stopped at a pool hall. Then after dropping the other passenger off, they stopped at Bush’s mother’s home for Bush to pick up something. Mott waited outside until a man, later identified as Mason Cook, bothered her. She then joined Bush inside the mother’s home. At this point, Mott alleges that Bush made sexual advances toward her and advised her that they would have sex before she arrived home. They then left the mother’s home, according to Mott, with her crying and Bush, with his hand on her back, forcing her into the car. They then proceeded to an orange grove where sexual intercourse occurred. Mott claims rape; Bush asserts that the sexual act was consensual.
Although only Bush and Mott were present during the sexual encounter, her version is supported by the fact that she soon thereafter reported the incident to the woman with whom she lived, and the police became involved. Bush’s version would have been supported by the testimony of Mason Cook, who allegedly remained outside the mother’s home and observed Bush and Mott leave for the orange grove and who testified on deposition that Mott was not crying and she was not forced into the car but rather it appeared that she and Bush were on a date. I say Bush’s version “would have been” supported by Cook’s testimony. The problem is that Cook did not appear at trial. When defense counsel was ready to call him at about 3:30 in the afternoon, Cook was nowhere to be found. This may have resulted from the confusion in delaying the start of trial. In any event, defense counsel asked for a recess until the following morning in order to locate Cook and present his testimony. Although the court granted a much shorter recess, Cook could not be found in the few minutes permitted and the defense was forced to trial without him. Because the defense elected not to put the defendant on the stand, Mott’s testimony went unchallenged. Bush was convicted and sentenced to thirty years in prison.
The issue on this rule 3.850 appeal is whether defense counsel was ineffective in failing to present a known witness whose testimony would tend to impeach Mott and support the consent defense urged by Bush. The trial judge granted the new trial by finding that counsel was ineffective in not presenting Cook’s (and another witness’) testimony. I would affirm because there is ample support in the record that *1183 counsel was ineffective in not making diligent efforts to assure the attendance of this supporting witness whose deposition was taken and was before the court.[2]
Defense counsel did appeal the court’s denial of an over-night continuance. Under the circumstances, it was the best he could then do. We (and I was on the panel) per curiam affirmed the trial court’s discretionary ruling not to grant the continuance because the standard required by Geralds v. State, 674 So.2d 96 (Fla.1996), cert denied, Geralds v. Florida, 619 U.S. 891, 117 S.Ct. 230, 136 L.Ed.2d 161, was not met[3].
The State argued on the original appeal that the trial court’s discretion should be upheld because defense counsel had failed to exert due diligence to assure the appearance of the nón-appearing witness.[4] *1184 Indeed, in Geralds, our • supreme court made due diligence an element of proof in order to prevail on a motion for continuance based on a non-appearing witness.
By affirming the trial court’s denial of the continuance based on defense counsel’s lack of due diligence in assuring the attendance of the witness, did we not in essence hold that defense counsel was ineffective in the way he handled this particular witness? [5] The' State urged in its brief that the witness may not even have been subpoenaed. The record , appears unclear. Counsel at the very least should have kept in contact with the witness to make sure that the witness knew when to appear (particularly after the trial had been continued for a day) and that he continued to be available. Any change in this status should have immediately been reported to the court. No such diligence was shown by this record.
Additional response on the State’s argument on prejudice seems warranted. The test is not whether counsel’s deficiency would have “more likely than not altered the outcome of the case.” See Strickland v. Washington, 466 U.S. at 693, 104 S.Ct. 2052. Rather, the Strickland court held that the test is whether the defendant has shown “that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” But what does “probability” mean?
If a “reasonable probability” does not mean “more likely than not” as determined by the Supreme Court, what does it mean? Justice Souter has told us in Strickler v. Greene, 527 U.S. at 296, 119 S.Ct. 1936 that he believes the term “significant possibility” would do better at capturing the degree to which the undisclosed evidence would place the actual result in question, sufficient to warrant overturning a conviction or sentence. This standard is only somewhat greater than the harmless error standard (the State has the burden of showing that there is no reasonable possibility that the error contributed to the conviction). Here, the defendant must show a substantial possibility that such prejudice exists. But this burden, according to Souter’s concurring/dissenting opinion in Strickler, can be met by showing that “one cannot be reasonably confident that not a single juror would have had a different perspective after an impeachment that would have destroyed the credibility of that story.” 527 U.S. at 305, 119 S.Ct. 1936. Cook’s testimony, if believed by the jury, would have cast doubt on the relationship between Bush and Mott shortly before the sexual encounter[6]. Further, it *1185 would indicate that Mott had prevaricated in order to bolster her charge. And the test is not whether the trial judge, or we as appellate judges, believe the omitted testimony; the issue is whether there is a significant possibility that at least one of the jurors would have.
The significance of Justice Souter’s comments in Strickler concerning a standard less than “more likely than not” is shown by the fact that they were discussed with approval by the Florida Supreme Court in Gaskin v. State, 822 So.2d 1243, (Fla.2002), which then admonished that “[a]ll involved in the criminal justice system should take note of Justice Souter’s cautionary warning.” Gaskin, 822 So.2d at 1247 n. 3. Because I am not reasonably confident that not a single juror would have had a different perspective after hearing the omitted testimony, I would affirm the trial judge.

. The defense motion before the court urged that counsel was ineffective because he failed to have present and available to testify witnesses who had relevant and material testimony that would support the defense theory of the case. The trial court found ineffectiveness because at least one of the witnesses did have relevant and material testimony and counsel should have assured his presence. The court then opined that the reason counsel was ineffective was that he misjudged the value of the testimony. The reason for the ineffectiveness is surplusage. It is the fact of ineffectiveness, not the reason, that is important.

. Rule 3.190(j), Florida Rules of Criminal Procedure, bars the introduction into evidence of depositions which are not in compliance with its terms. This rule has been used on several occasions to bar the introduction by the State of nonconforming depositions. Should the rule be rigidly enforced against a defendant when its enforcement would deprive the defendant of a fair trial? Courts have held that when considering excluding testimony because of a discovery violation "the proposition that the reciprocal rules of discovery should be followed” should be balanced against the defendant’s fundamental right to defend himself. See Mattear v. State, 657 So.2d 46 (Fla. 4th DCA 1995) (since the testimony sought to be introduced by the witnesses in the instant case was exculpatory in nature, exclusion of the testimony would deny appellant his fundamental right to defend himself in violation of the Sixth Amendment). It appears that if a court is going to deny a short continuance to permit defendant to locate a missing, subpoenaed witness whose testimony is of an exculpatory nature, the deposition taken by the State and readily available should be admissible by the defendant to assure his right to defend himself.

. The concurring opinion takes the position that defense counsel simply wasn't ineffective for failing to have witnesses which he knew would be critical to his defense present at trial. After all, says the concurring opinion, the witnesses were subpoenaed (a fact questioned by the State) and a private investigator was charged with keeping up with the witnesses. And yet defense counsel was unaware at 3:30 p.m. on the day of trial when it was time to call the witnesses that they were not present. Whether it is defense counsel or his private investigator who is ineffective seems of little moment to the defendant. Even though a mistrial was declared on the original trial date, défense counsel never contacted (nor is there any indication that he had his private investigator do so) the very witnesses on which his defense rested to confirm that they knew the new trial date or that they could be present at the new time. Counsel can not simply issue a subpoena some weeks or months before a trial, particularly if the original trial date has been changed, and hope the witnesses will appear. Further, the position of the concurring opinion is at odds with the State’s position on the original appeal that defense counsel had failed to make a diligent effort to have his witnesses present and thus could not successfully challenge the trial court’s discretion in denying the continuance. Finally, if this court erred in our decision that defense counsel had failed to meet the Geralds's requirements in order to reverse the trial court's discretion in denying the continuance (a position I do not take), then affirming the trial court's grant of a new trial is the most (and least) we can now do.

.The State's only other argument relative to this issue in the initial appeal was that denial of this testimony was not prejudicial and, in any event, that Cook’s credibility’would have been marginal. First, Cook's credibility should have been resolved by the jury, not the State. Second, the failure to present the only testimony tending to support the defense theory of the case met, in my view, Justice Souter's restatement of the Strickland prejudice standard to be a showing of a "substantial possibility” that at least one juror would have had a different perspective based on the impeachment testimony. See Strickler v. Greene, 527 U.S. 263, 296, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

. This is not a "bird in the bush” situation; here, there was a witness in hand. When defense counsel is aware of a witness who has given testimony under oath favorable to his client prior to trial, his failure to produce that witness at trial seems presumptively ineffective.

. The undisputed evidence is that the parties were friendly at the wedding; Mott accepted an offer for a ride home from Bush; Mott voluntarily accompanied Bush to his mother’s house; they went from the mother’s house to an orange grove; after Mott supplied a condom, they had sex; the condom came off during-sex but Bush proceeded to ejaculation. Mott testified that after Bush made it clear at his mother’s house that he intended to have sex with her, she resisted and was taken to the car and forced inside while she was crying. She testified that she provided the condom only after she believed her rape was inevitable. Bush’s witnesses would have testified that Mott "came on” to Bush at the wedding and that, as she came out of Bush’s mother's house, instead of being forced into the car crying, the parties appeared to be on a date. Had this evidence come in, the jury would have had -to decide whether Mott's tearful reaction upon her return home was because she was required to have sex through intimidation or whether her consent to have safe sex turned to remorse after she realized *1185 that the condom had come off and that she was exposed to pregnancy and/or AIDS. The jury, hearing only one side of the story, had no problem believing the former. But had the jury heard the rest of the story, is there a substantial possibility that at least one of the jurors would have viewed the evidence differently? The trial judge said yes and I agree.