PER CURIAM.
John Calvin Taylor, II, appeals an order of the circuit court denying his motion to vacate his conviction of first-degree murder and sentence of death filed under Florida Rule of Criminal Procedure 3.851 and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, *543 § 3(b)(1), (9), Fla. Const. For the reasons that follow, we affirm the postconviction court’s denial of relief and deny Taylor’s habeas petition.
OVERVIEW
John Calvin Taylor, II, was convicted of the first-degree murder of Shannon Hol-zer and robbery with a deadly weapon. The jury recommended a sentence of death by a vote of ten to two. The trial court imposed a sentence of death, which this Court affirmed on direct appeal. Taylor filed a postconviction motion asserting various claims, and after an evi-dentiary hearing on some of those claims, the postconviction court denied Taylor’s motion. Taylor now appeals that denial of relief and has also filed a petition for writ of habeas corpus asserting ineffective assistance of appellate counsel on direct appeal.
FACTS AND PROCEDURAL HISTORY
On direct appeal this Court affirmed Taylor’s convictions and sentence. Taylor v. State, 855 So.2d 1, 32 (Fla.2003). This Court summarized the facts underlying Taylor’s convictions:
John Calvin Taylor, II (Taylor), was tried and convicted for the robbery and murder of Shannon Holzer (Holzer). The evidence presented at trial showed Jeff Holzer, the victim’s husband, arrived home early on the morning of December 30, 1997, and became concerned because his wife was not at home. After calling the police and local hospitals to see if any accidents had been reported, he called the police to report his wife missing. Later that evening, Holzer’s vehicle was discovered stuck in the mud on a fire break road in a wooded area. Holzer’s body was discovered a short time later off the road in the woods. She had been stabbed nine times in the abdomen and upper chest. Holzer’s clothing, including her pants and underwear, had been partially removed.
At trial, a forensic pathologist, Dr. Bonifacio Floro, testified that of Holzer’s nine stab wounds, six had penetrated her heart and three had penetrated her left lung. Dr. Floro indicated each of the wounds was potentially fatal. According to Dr. Floro, one wound, which he believed to be the initial wound, was consistent with having been made by someone sitting in the passenger’s seat while Holzer was seated in the driver’s seat and the rest of the wounds were consistent with the victim lying on her back. Dr. Floro also indicated that there were wounds and other signs that were consistent with Holzer struggling to escape or protect herself. Additionally, Dr. Floro discovered two small bruises inside the victim’s vagina and he opined that they were made no more than twelve hours before Holzer’s death.
Police learned that Holzer had last been seen the previous day at Buddy Boy’s, a small convenience store located in St. Johns County, Florida, where she was employed. Early in the afternoon of December 29, 1997, Holzer left work to deposit money for Buddy Boy’s and also to deposit money for a small meat shop that was located behind Buddy Boy’s. Cindy Schmermund was Holzer’s friend and coworker. Both Schmer-mund and Holzer knew Taylor from having worked at Buddy Boy’s. Schmer-mund remembered Holzer leaving around 1 p.m. to make the deposit, which had to be to the bank by 2 p.m. The deposit included cash and checks, with the cash portion of the deposit totaling more than $6000. Schmermund saw Holzer pull up to Buddy Boy’s gas pumps with Taylor in the car. After pumping the gas, Holzer entered the *544 store, and Schmermund questioned her as to why Taylor was in her car. Schmermund testified that Holzer said she was giving Taylor a ride to Green Cove Springs to pick up a rental car and that “[Taylor] was harmless. [I’ll] be fine. Don’t worry about it. I’ll be back in a minute.” Several other individuals, Joe Dunn, Arthur Mishoe, and Nolan Metcalf, also saw Taylor accompanying Holzer as she was leaving to make the deposit and each testified that they each heard Holzer making various statements about taking Taylor to Green Cove Springs, including statements that she did not want anyone to tell her husband that she was giving Taylor a ride.
On the day Holzer’s body was discovered, Taylor was arrested for an unrelated burglary involving the theft of a briefcase from a vehicle. At the time of his arrest, Taylor was wearing a pair of boxer shorts that were later discovered to have a blood stain that contained genetic material that was consistent with [ ] Holzer’s DNA profile.
At trial, the State introduced the testimony of James Bullard and Michael McJunkin, who lived with Taylor in the mobile home near Buddy Boy’s. Both Bullard and McJunkin testified that Taylor made comments about wanting to have sex with Holzer. Bullard and McJunkin also testified that Taylor was having financial problems and had been having difficulty paying his bills. Additionally, Taylor had recently been involved in an accident with his truck. While he was waiting on the insurance payments, he was driving a rented white Geo Metro.
The State also introduced evidence showing Taylor had substantial sums of money on the day of Holzer’s disappearance. Most notably, Taylor was photographed depositing $1700 into his bank account at 3:48 p.m., only a few hours after Holzer had deposited money for the meat shop. Before making the deposit, Taylor had a negative balance and had recently bounced several checks. That same afternoon, Taylor went to a restaurant and lounge to give the owner some money to cover some bad checks Taylor had written. Taylor also stopped by Garber Ford Mercury, a car dealership in Green Cove Springs, where he expressed interest in purchasing a truck. Additionally, on the evening of December 29, 1997, Taylor and McJunkin went to a local bar. A bartender testified that Taylor bought a number of drinks for other bar patrons and, by the end of the evening, he had incurred a bill of approximately $150 to $200. In addition to paying for the drinks, Taylor gave the bartender two $100 bills as a tip.
By early morning on December 30, 1997, the police had interviewed the witnesses who had seen Taylor with Holzer. The police also learned Holzer had not deposited the money into Buddy Boy’s account. Although they did not discover her car and body until later in the evening, police also knew that Holzer had not been to feed or tend to her horse. The police dispatcher put out information with Taylor’s address and a description of his rental car.
Deputy Chris Strickland was off duty and was driving with a friend in the vicinity of Vineyard Trailer Park when he learned from the dispatch about Hol-zer’s disappearance. Strickland proceeded to Taylor’s mobile home and discovered that Taylor’s rental car was parked outside. Strickland called in for a marked unit, and shortly thereafter, Deputy Bob Lindsey arrived. Deputies Strickland and Lindsey knocked on the door of the mobile home and McJunkin answered the door and invited the officers inside. Taylor had been taking a *545 shower and walked into the living room of the mobile home wearing only a towel. Deputy Strickland suggested Taylor get dressed, and watched Taylor get dressed to make sure that Taylor did not arm himself. The deputies informed Taylor that Holzer was missing and that he had been the last person seen with her. They also told him that Detective Ronnie Lester wanted to speak with him at the station.
Shortly after Strickland and Lindsey entered the trailer, Deputies John Noble and Shawn Lee arrived and entered the open door of the trailer. When the other deputies arrived, Deputy Strickland and his friend left. Deputy Lindsey was given Taylor’s driver’s license and he took it to his patrol car to see if Taylor had any outstanding warrants. From his patrol car, Lindsey had an unobstructed view of Taylor sitting in a chair inside the mobile home. He observed Taylor reach into his pocket, remove something, and shove it under the cushion of the chair where he was sitting. Alarmed that Taylor had placed a weapon under the cushion, Lindsey went quickly into the mobile home and asked Taylor to get up and move toward the kitchen. When asked what he had concealed, Taylor denied placing anything under the cushion. Upon obtaining Taylor’s permission, the deputies looked under the cushion and discovered a roll of cash, totaling around $1600. The police handcuffed Taylor, read him his rights, and took him outside to sit in the back seat of a patrol vehicle with the door open, at which point they removed the handcuffs. At Noble’s request, Taylor signed two consent forms to search the mobile home and his rental car. Deputy Noble testified that Taylor told him there was more money under the passenger’s seat of his car. Noble looked under the seat and observed a purple bag full of money.
McJunkin was a key witness for the State at trial. McJunkin testified that Taylor had occasionally talked about robbing Holzer. According to McJun-kin, Taylor had chosen Holzer as his target because Buddy Boy’s was close to the Vineyard Trailer Park and he knew when Holzer left to make deposits at the bank. On the morning of December 29, 1997, McJunkin and Taylor were staying at the house of Taylor’s estranged wife, Mary Ann Taylor. McJunkin said that after Mrs. Taylor left for work, Taylor decided to rob Holzer. McJunkin drove Taylor to Buddy Boy’s and dropped him off. Taylor instructed McJunkin to return to Mrs. Taylor’s house and wait for him to call. Later, Taylor called from a gas station in Green Cove Springs and told McJunkin to come pick him up. After picking Taylor up, McJunkin drove to a parking lot, where Taylor proceeded to count and separate large amounts of money that he had concealed in his waistband. Taylor put the money into a purple velvet bag that had contained a bottle of “Crown Royal” liquor. According to McJunkin, Taylor said that “if [Holzer] didn’t show up within a couple days everything should be fine.”
McJunkin testified that he and Taylor returned to the mobile home and Taylor changed his clothes and placed the clothes and shoes he had been wearing into a trash bag. According to McJun-kin, Taylor threw this trash bag into a dumpster behind the restaurant where he had paid for his bad checks. McJun-kin testified that at some point as they drove from location to location, they crossed the Bridge of Lions in St. Augustine and as they were driving across, Taylor directed McJunkin to throw a knife off the bridge.
*546 At trial, Taylor’s defense was that McJunkin had committed the robbery and murder. Taylor took the stand in his own defense. Taylor did not deny requesting a ride or leaving Buddy Boy’s with Holzer in her car. Taylor alleged that he walked to Buddy Boy’s after McJunkin had taken his rental car to the mobile home, leaving Taylor stranded at his wife’s house. Taylor claimed that he asked Holzer to take him to his mobile home to pick up his rental car. According to Taylor’s version of events, Holzer dropped him off at the mobile home and McJunkin was there playing video games. Taylor claimed Holzer gave McJunkin a ride to Green Cove Springs to visit a friend and some time later, McJunkin called him from a gas station near the scene of the crime to pick him up. During his testimony, Taylor denied telling Deputy Noble about additional money under the passenger’s seat of the rental car. Taylor also explained that the money he deposited in his bank account and the money that he hid under the seat cushion in the trailer was money he had stolen from the briefcase of a man named Chip Yelton.
The jury found Taylor guilty of first-degree murder and robbery with a deadly weapon.
Taylor, 855 So.2d at 9-13 (footnotes omitted). A penalty phase was conducted and the jury recommended the death sentence by a vote of ten to two. Id. at 13. The trial judge found four aggravating circumstances: (1) Taylor was previously convicted of another violent felony; (2) the crime was committed while Taylor was engaged in the commission of a robbery; (3) the murder was committed for pecuniary gain (merged with “in the course of a felony”); and (4) Taylor was under sentence of imprisonment at the time the murder was committed. Id. at 13, n. 9. The trial court found three nonstatutory mitigating circumstances: (1) Taylor was raised in a dysfunctional family and suffered neglect and abuse during his first eleven years; (2) by the time Taylor was encouraged to have an interest in education, it was too late, and he dropped out of junior high school; and (3) Taylor has shown that he can be a skilled, reliable, and diligent worker inside and outside of prison. Id. at 14, n. 10. The trial court determined that the aggravation “greatly outweighs the relatively insignificant nonstatutory circumstances established by this record” and sentenced Taylor to death. Id. at 13. Taylor raised multiple claims on direct appeal,[1] all of which this Court rejected in *547 affirming Taylor’s convictions and sentence of death. Id. at 32.
Taylor filed an initial motion to vacate judgments of conviction and sentence under Florida Rule of Criminal Procedure 3.851, raising two claims. After a change of counsel, Taylor filed an amended motion submitting eleven claims: (1) Taylor cannot prepare an adequate rule 3.851 motion until he has received public records materials and has been afforded due time to review and amend; (2) all aggravators must be found by the penalty phase jury; (3) numerous claims of ineffective assistance of trial counsel in guilt and penalty phases; (4) the prosecutors, now Judge Collins and State Attorney Angela Corey, knowingly presented the false testimony of Michael McJunkin in violation of Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); (5) newly discovered evidence that McJunkin was the actual perpetrator; (6) cumulative error; (7) actual innocence based on witnesses’ contradiction; (8) trial counsel was ineffective for failing to obtain a complete record for appellate review; (9) Taylor’s death sentence is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); (10) Florida’s death penalty statute is a violation of the Eighth Amendment and trial counsel was ineffective for failing to make this argument; and (11) Florida’s lethal injection statute is unconstitutional on various grounds including the prohibition on cruel and unusual punishment. Following a Hujf[2] hearing, the postconviction court granted an evidentia-ry hearing on certain subclaims of claims three, four, and five. Following the evi-dentiary hearing, the postconviction court denied postconviction relief on all claims.
Taylor now appeals, raising the following issues for our review: (1) whether the trial court erred in denying Taylor’s claim that trial counsel was ineffective in failing to properly utilize a mental health expert in the penalty phase to establish mental mitigation; (2) whether the trial court erred in denying Taylor’s claim that trial counsel was ineffective for failing to move for a change of venue; (3) whether the trial court erred in denying Taylor’s claim that counsel was ineffective for failing to object to improper prosecutorial comments during the guilt phase closing argument; and (4) whether Florida’s capital sentencing scheme is unconstitutional under Ring.
Taylor has also filed a habeas petition, raising the following issue: whether appellate counsel was ineffective in neglecting to argue on direct appeal that the trial court erred in failing to comply with the requirements of this Court’s decision in Campbell v. State, 571 So.2d 415 (Fla.1990), and specifically consider and weigh each established mitigating and aggravating factor in its sentencing order.
POSTCONVICTION MOTION
Ineffective Assistance of Trial Counsel Claims
Taylor raises the following ineffective assistance of trial counsel claims: (1) the trial court erred in denying Taylor’s claim that trial counsel was ineffective in failing to utilize a mental health expert in the penalty phase to establish mental mitigation; (2) the trial court erred in denying Taylor’s claim that trial counsel was ineffective for failing to move for a change of venue; and (3) the trial court erred in denying Taylor’s claim that counsel was *548 ineffective for failing to object to improper prosecutorial comments during the guilt phase closing argument. For the reasons addressed below, we affirm the postconviction court’s denial of relief.
Strickland Standard of Review
Following the United State Supreme Court’s decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we have held that for ineffective assistance of counsel claims to be successful, the defendant must demonstrate both deficiency and prejudice:
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined.
Bolin v. State, 41 So.3d 151, 155 (FIa.2010) (quoting Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986)).
There is a strong presumption that trial counsel’s performance was not deficient. See Strickland, 466 U.S. at 690, 104 S.Ct. 2052. “A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.” Id. at 689, 104 S.Ct. 2052. The defendant carries the burden to “overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ ” Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). “Judicial scrutiny of counsel’s performance must be highly deferential.” Id. “[Strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel’s decision was reasonable under the norms of professional conduct.” Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000). Furthermore, where this Court previously has rejected a substantive claim on the merits, counsel cannot be deemed ineffective for failing to make a merit-less argument. Melendez v. State, 612 So.2d 1366, 1369 (Fla.1992).
In demonstrating prejudice, the defendant must show a reasonable probability that “but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 694, 104 S.Ct. 2052.
Because both prongs of the Strickland test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the circuit court’s factual findings that are supported by competent, substantial evidence, but reviewing the circuit court’s legal conclusions de novo. See Sochor v. State, 883 So.2d 766, 771-72 (Fla.2004).
Johnston v. State, 63 So.3d 730, 737 (Fla.2011) (parallel citations omitted). Taylor has failed to satisfy the Strickland requirements in any of the claims, which we address in turn below.
a. Failing to Utilize a Mental Health Expert in the Penalty Phase
Taylor contends that the postcon-viction court erred in rejecting his claim that trial counsel was ineffective during the penalty phase because counsel did not ask his mental health expert to determine whether Taylor qualified for application of statutory mental mitigators and because he did not present his mental health ex *549 pert to the jury. Taylor contends that had defense counsel used Dr. Krop’s testimony, the statutory mental mitigators (1) under extreme mental or emotional disturbance, and (2) capacity to conform conduct to the law was impaired, would have been found by the trial court and Taylor would not have received the death penalty. Taylor’s claim is without merit.
As this Court has said, “the obligation to investigate and prepare for the penalty portion of a capital case cannot be overstated.... ” State v. Lewis, 838 So.2d 1102, 1113 (Fla.2002).
[ 0]ur principal concern in deciding whether [counsel] exercised “reasonable professional judgmen[t]” is not whether counsel should have presented a mitigation case. Rather, we focus on whether the investigation supporting counsel’s decision not to introduce mitigating evidence ... was itself reasonable. In assessing counsel’s investigation, we must conduct an objective review of their performance, measured for “reasonableness under prevailing professional norms,” which includes a context-dependent consideration of the challenged conduct as see[n] “from counsel’s perspective at the time.”
Orme v. State, 896 So.2d 725, 731 (Fla.2005) (quoting Wiggins v. Smith, 539 U.S. 510, 522-23, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)). “Trial counsel will not be held to be deficient when [ ]he makes a reasonable strategic decision to not present mental mitigation testimony during the penalty phase because it could open the door to other damaging testimony.” Gaskin v. State, 822 So.2d 1243, 1248 (Fla.2002) (citing Ferguson v. State, 593 So.2d 508, 510 (Fla.1992)). “[T]rial counsel is granted great latitude in decisions regarding the use of expert witnesses.” Franqui v. State, 965 So.2d 22, 31 (Fla.2007).
Regarding Taylor’s assertion that counsel was deficient in his investigation of mitigation for failing to ask Dr. Krop whether Taylor qualified for the statutory mental mitigators, this claim is without merit. As set forth in the postconviction court’s order, the record reflects that counsel had many communications with Dr. Krop that went as far back as September 21, 1998, when he wrote Dr. Krop a letter to inform him that he had been appointed as a confidential expert to evaluate Taylor. The letter includes counsel’s concern that Taylor appeared not to suffer from any major mental deficiencies, along with counsel’s request that Dr. Krop evaluate Taylor to make sure such preliminary determinations were accurate. The record shows that Dr. Krop evaluated Taylor and reported his findings regarding Taylor’s mental health status. There was nothing deficient regarding counsel’s investigation of Taylor’s mental health or communications with Dr. Krop. Upon finding no deficiency, we decline to address prejudice in this sub-claim.
Regarding Taylor’s assertion that counsel was ineffective for failing to present Dr. Krop’s testimony at the penalty phase, this claim is also without merit. First, Taylor fails to establish deficiency. While Dr. Krop did not diagnose Taylor as antisocial, he noted that Taylor had antisocial tendencies, including being impulsive and acting without thinking about the consequences. Counsel testified during the postconviction evidentiary hearing that he, co-counsel, and Taylor all agreed that Dr. Krop should not testify at the penalty phase. Counsel testified during the post-conviction evidentiary hearing that Dr. Krop’s “wishy-washy” opinion regarding Taylor’s antisocial tendencies would likely work against them because despite not having a full diagnosis of antisocial personality disorder, the antisocial behavior would likely be used against Taylor. *550 Counsel stated that he knew the prosecutor in the case and knew that she was fully prepared to handle the cross-examination concerning an antisocial diagnosis or antisocial tendencies. Counsel recalled a discussion with Dr. Krop regarding possible mental mitigators, during which Dr. Krop conveyed his opinion to counsel that the possibility of an antisocial diagnosis by the State or harsh cross-examination by the State in response to Taylor’s antisocial behavior would be detrimental to the defense. See Gaskin, 822 So.2d at 1248. Thus, we find counsel’s decision not to present Dr. Krop’s testimony to be a reasonable strategy under the circumstances.
Furthermore, Taylor has failed to establish prejudice. “Penalty phase prejudice under the Strickland standard is measured by whether the error of trial counsel undermines this Court’s confidence in the sentence of death when viewed in the context of the penalty phase evidence and the mitigators and aggrava-tors found by the trial court.” Hurst v. State, 18 So.3d 975, 1013 (Fla.2009). That standard does not “require a defendant to show ‘that counsel’s deficient conduct more likely than not altered the outcome’ of his penalty proceeding, but rather that he establish ‘a probability sufficient to undermine confidence in [that] outcome.’” Porter v. McCollum, 558 U.S. 30, 130 S.Ct. 447, 455-56, 175 L.Ed.2d 398 (2009) (quoting Strickland, 466 U.S. at 693-94, 104 S.Ct. 2052). “To assess that probability, [the Court] considers] ‘the totality of the available mitigation evidence ... ’ and ‘reweig[hs] it against the evidence in aggravation.’ ” Id. at 453-54, 130 S.Ct. 447 (quoting Williams v. Taylor, 529 U.S. 362, 397-98, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).
Taylor asserts that had Dr. Krop testified at the penalty phase, he would have established the statutory mental miti-gators: (1) under extreme mental or emotional disturbance, and (2) capacity to conform conduct to the law was impaired. However, nothing in the record supports this assertion. Dr. Krop’s evaluation provides no opinion that Taylor qualified for either of the above statutory mental miti-gators. In fact, Dr. Krop’s evaluation found no organic brain damage or any other major mental illnesses to establish mental mitigation. See generally Suggs v. State, 923 So.2d 419, 436 (Fla.2005) (defendant could not establish prejudice for counsel failing to present mitigation at the penalty phase when there were no major psychiatric disorders and evidence would have been damaging). Furthermore, post-conviction counsel presented no evidence of a mental illness or mental mitigation at the postconviction evidentiary hearing that should have been elicited during the penalty phase. Thus, Taylor has failed to establish prejudice for counsel not calling Dr. Krop to testify at the penalty phase.
Accordingly, we affirm the postconviction court’s denial of this claim.
b. Failing to Move for a Change of Venue
Taylor contends that trial counsel was ineffective for failing to move for a change of venue due to prejudicial pretrial publicity. Taylor asserts that the trial court erred in summarily denying this claim. First, the record demonstrates that this claim was not summarily denied. This issue was a subclaim of claim three of Taylor’s postconviction motion, which included various claims of ineffective assistance of counsel. After a Huff hearing, the postconviction court granted an evi-dentiary hearing on claim three and this subclaim was addressed at the evidentiary hearing, albeit briefly.
The Strickland standard applies to this ineffective assistance of counsel claim. *551 Regarding prejudice, “the defendant must, at a minimum, ‘bring forth evidence demonstrating that the trial court would have, or at least should have, granted a motion for change of venue if [defense] counsel had presented such a motion to the court.’ ” Dillbeck v. State, 964 So.2d 95, 104 (Fla.2007) (quoting Wike v. State, 813 So.2d 12, 18 (Fla.2002)). Taylor failed to demonstrate a legal basis for filing a motion for change of venue. There were no undue difficulties in selecting an impartial jury. Only one-fifth of the prospective jurors had heard of the case, and of the ones who had some extrinsic knowledge about the case, the people who sat on the jury assured the court during individual voir dire that they could be impartial despite their extrinsic knowledge. Therefore, any motion for change of venue would have been denied. Finding no prejudice, we do not address deficiency.
Taylor cites Spera v. State, 971 So.2d 754 (Fla.2007), for the contention that he should be able to amend his motion on this claim. See id. at 761 (holding that striking facially insufficient pleadings and dismissing with prejudice without granting at least one opportunity to amend is an abuse of discretion unless the complaint is not amendable). However, because the record conclusively refutes Taylor’s claim, Spera does not apply. See id. at 762 (“We also stress that our decision is limited to motions deemed facially insufficient to support relief — that is, claims that fail to contain required allegations. When trial courts deny relief because the record conclusively refutes the allegations, they need not permit the amendment of pleadings.”). Here, the trial court did not strike the motion as insufficiently pleaded, but allowed an evidentiary hearing on the issue and denied the claim on the merits. Accordingly, we affirm the trial court’s denial of Taylor’s claim.
c. Improper Prosecutorial Comments During the Guilt Phase Closing Argument
Taylor contends that the postcon-viction court erred in finding that counsel was not ineffective in failing to object to prosecutorial misconduct during the State’s guilt phase closing argument, which Taylor contends inflamed the emotions of the jury and bolstered a witness’s credibility. Taylor asserts that had counsel objected, the jury verdict would have been different.
The Strickland standard applies. Trial counsel cannot be deemed deficient for failing to object to arguments that are proper. Rogers v. State, 957 So.2d 538, 550 (Fla.2007); accord Mungin v. State, 932 So.2d 986, 997 (Fla.2006); Walls v. State, 926 So.2d 1156, 1176 (Fla.2006). The record provides that the majority of the prosecutor’s comments alleged to be improper were an accurate depiction of the evidence that was presented at trial.
Even if counsel was deficient for failing to object to any of the prosecutor’s comments, Taylor has failed to establish prejudice. If “improper comments by a prosecutor do not constitute reversible error, the defendant ‘cannot demonstrate the prejudice requisite for a successful ineffective assistance of counsel claim’ ” relating to counsel’s failure to object to the comments. Lugo v. State, 2 So.3d 1, 17 (Fla.2008) (citing Hodges v. State, 885 So.2d 338, 356 (Fla.2004)). In order to require a new trial based on improper prosecutorial comments, the prosecutor’s comments must
either deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach ■ *552 a more severe verdict than that it would have otherwise.
Walls, 926 So.2d at 1167 (quoting Spencer v. State, 645 So.2d 377, 383 (Fla.1994)). We do not find that the prosecutorial comments at issue reach this level.
Accordingly, we affirm the postconviction court’s denial of this claim.
Ring[3] Claim
Taylor contends that Florida’s capital sentencing scheme is unconstitutional under Ring. First, this claim is pro-eedurally barred because it was raised and denied on the merits in the direct appeal of this case. Taylor, 855 So.2d at 13-14, n. 11. Additionally, because Taylor was convicted of a murder that occurred in connection with robbery with a deadly weapon and because Taylor had previously been convicted of a prior violent felony, we find this claim without merit. We have repeatedly rejected this argument when either aggravating factor is present. See McMillian v. State, 94 So.3d 572 (Fla.2012); Heyne v. State, 88 So.3d 113, 120, n. 2 (Fla.), cert. denied, - U.S. -, 133 S.Ct. 574, 184 L.Ed.2d 377 (2012); Kopsho v. State, 84 So.3d 204, 220 (Fla.), cert. denied, - U.S. -, 133 S.Ct. 190, 184 L.Ed.2d 97 (2012); Hodges v. State, 55 So.3d 515, 540 (Fla.2010), cert. denied, - U.S. -, 132 S.Ct. 164, 181 L.Ed.2d 77 (2011).
Taylor claims that the decision in Evans v. McNeil, 08-14402-CIV-JEM, 2011 WL 9717450 (S.D.Fla.2011), in which the United States District Court for the Southern District of Florida determined that Florida’s death penalty procedures violate Ring, supports Taylor’s contention that his sentence of death should be vacated. However, the Eleventh Circuit Court of Appeals reversed the decision of the District Court. Evans v. Sec’y, Fla. Dep’t of Corr., 699 F.3d 1249, 1270 (11th Cir.2012), cert. denied, Evans v. Crews, - U.S. -, -, 133 S.Ct. 2393, 185 L.Ed.2d 1105, 2013 WL 1129051, *1 (2013). Furthermore, even if it had affirmed, a federal district or appeals court ruling that a Florida statute is unconstitutional is not binding on this Court. State v. Dwyer, 332 So.2d 333, 335 (Fla.1976). Accordingly, we affirm the postconviction court’s denial of this claim.
HABEAS CORPUS PETITION
In his habeas petition, Taylor contends that appellate counsel was ineffective for failing to argue on direct appeal that the trial court failed to comply with the requirements of this Court’s decision in Campbell, 571 So.2d at 415, and Ferrell v. State, 653 So.2d 367 (Fla.1995), to specifically consider and weigh each established mitigating and aggravating factor in its sentencing order.
“Claims of ineffective assistance of appellate counsel are appropriately presented in a petition for writ of habe-as corpus.” Chavez v. State, 12 So.3d 199, 213 (Fla.2009). To grant habeas relief on the basis of ineffectiveness of appellate counsel, this Court must resolve two issues: (1) whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance; and (2) whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result. Douglas v. State, - So.2d -, 2012 WL 16745 (Fla.2012) (quoting Bradley v. State, 33 So.3d 664, 684 (Fla.2010)). Taylor has failed to establish prejudice to warrant relief under this claim.
*553 In Campbell, this Court provided guidelines to clarify the requirements of a trial court addressing the aggravating and mitigating factors in its sentencing order for a capital case.
When addressing mitigating circumstances, the sentencing court must expressly evaluate in its written order each mitigating circumstance proposed by the defendant to determine whether it is supported by the evidence and whether, in the case of nonstatutory factors, it is truly of a mitigating nature. ... The court next must weigh the aggravating circumstances against the mitigating and, in order to facilitate appellate review, must expressly consider in its written order each established mitigating circumstance. Although the relative weight given each mitigating factor is within the province of the sentencing court, a mitigating factor once found cannot be dismissed as having no weight. To be sustained, the trial court’s final decision in the weighing process must be supported by “sufficient competent evidence in the record.” Brown v. Wainwright, 392 So.2d 1327, 1331 (Fla.1981).
Campbell, 571 So.2d at 419-20, receded in part from by Trease v. State, 768 So.2d 1050, 1055 (Fla.2000) (receding from Campbell to the extent that it disallowed trial courts from according no weight to a mitigating factor). In Ferrell, this Court stated, “The result of this weighing process must be detailed in the written sentencing order and supported by sufficient competent evidence in the record. The absence of any of the enumerated requirements deprives this Court of the opportunity for meaningful review.” Ferrell, 653 So.2d at 371.
To the extent that Taylor asserts that appellate counsel was ineffective for failing to argue on direct appeal that the trial court failed to consider the mitigators and aggravators, this claim is without merit. The trial court expressly found four aggravating circumstances, two of which were merged: (1) Taylor was previously convicted of another violent felony; (2) the crime was committed while Taylor was engaged in the commission of a robbery; (3) the murder was committed for pecuniary gain (merged with “in the course of a felony”); and (4) Taylor was under sentence of imprisonment at the time the murder was committed. The trial court found three nonstatutory mitigating circumstances: (1) Taylor was raised in a dysfunctional family and suffered neglect and abuse during his first eleven years; (2) by the time Taylor was encouraged to have an interest in education, it was too late, and he dropped out of junior high school; and (3) Taylor has shown that he can be a skilled, reliable, and diligent worker inside and outside of prison. The trial court also found that the other proposed mitigators were not proven. See Taylor, 855 So.2d at 13-14, n. 10. The trial court then concluded that the aggravation “greatly outweighs the relatively insignificant nonstatutory circumstances established by this record.” See id. at 13. Appellate counsel cannot be ineffective for failing to raise a meritless claim. See Valle v. Moore, 837 So.2d 905, 908 (Fla.2002).
To the extent that Taylor asserts that appellate counsel was deficient for failing to argue on direct appeal that the trial court improperly failed to assign weight to each mitigator and evaluate the relative weights of the aggravating and mitigating factors, Taylor is accurate that the trial court’s sentencing order does not give any indication of the relative weight given to the individual aggravating or mitigating circumstances. Rather, the trial court makes the broad statement that “the aggravating circumstances in this case far *554 outweigh the nonstatutory mitigating circumstances.”
However, we find no prejudice. Despite its non-conformity with the Campbell requirements, the trial court addressed all of the matters claimed in mitigation and aggravation and contained a proper weighing analysis even though individual weights were not assigned. This Court was able to conduct a meaningful review of Taylor’s case on direct appeal, reaching the conclusion that considering the “particularly egregious” murder in contrast with the relatively weak nonstatutory mitigation, along with the jury vote of ten to two in favor of the death sentence, Taylor’s death sentence was proportionate. Taylor, 855 So.2d at 32. Thus, we find that Taylor was not prejudiced by appellate counsel’s failure to raise this issue on direct appeal. See Fennie v. State, 855 So.2d 597, 608-09 (Fla.2003).
Accordingly, we deny Taylor’s habeas claim.
CONCLUSION
Based on the foregoing, we affirm the trial court’s denial of Taylor’s postconviction motion and deny Taylor’s habeas petition.
It is so ordered.
POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, LABARGA, and PERRY, JJ., concur.

. On direct appeal, Taylor raised the following claims: (1) the trial court erred in failing to suppress evidence seized from Taylor's house and vehicle, Taylor’s statements, and the clothing seized from Taylor when he was arrested; (2) the trial court erred in letting several witnesses testily about hearsay statements made by the deceased victim; (3) the trial court erred in admitting the credit application that Taylor filled out at the car dealership; (4) the trial court erred in allowing a prior consistent statement by Deputy Noble to be introduced; (5) the trial court erred in admitting the pair of boxer shorts with the victim’s blood stains; (6) the marital privilege was violated when Taylor’s wife was required to testify about certain communications she had with Taylor; (7) the trial court erred in instructing the jury on and finding the "under sentence of imprisonment” aggravating circumstance; (8) the trial court erred in failing to find several nonstatutory mitigating circumstances; and (9) the death sentence is disproportionate. Taylor, 855 So.2d at 13-14, n. 11.
Subsequent to the filing of briefs, this Court allowed the parties to file supplemental briefing on whether Florida's death penalty sentencing scheme is unconstitutional in light of the United States Supreme Court’s holding in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), but this Court denied relief on this supplemental claim based on this Court’s decisions in Botto *547 son v. Moore, 833 So.2d 693 (Fla.), cert. denied, 537 U.S. 1070, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002), and King v. Moore, 831 So.2d 143 (Fla.), cert. denied, 537 U.S. 1067, 123 S.Ct. 657, 154 L.Ed.2d 556 (2002). Id.

. Huff v. State, 622 So.2d 982 (Fla.1993).

. Ring v. Arizona, 536 So.2d 584 (2002).